

2000 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-6-2000

# Sterling v. Minersville

Precedential or Non-Precedential:

Docket 99-1768

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"Sterling v. Minersville" (2000). *2000 Decisions.* Paper 232.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/232

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed November 6, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 99-1768

MADONNA STERLING, Executrix of the Estate of Mar cus
Anthony Wayman

v.

BOROUGH OF MINERSVILLE; F. SCOTT WILINSKY ,
POLICE OFFICER; THOMAS HOBAN, POLICE OFFICER;
JOSEPH WILINSKY, POLICE CHIEF, individually and as
police officers for the Borough of Minersville

       Officer F. Scott Wilinsky and
       Officer Thomas Hoban,
       Appellants

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civ. No. 98-cv-01857)
District Judge: Honorable Arnold C. Rapoport

Argued
July 18, 2000

Before: MANSMANN, RENDELL and STAPLETON,
Circuit Judges.

(Filed: November 6, 2000)

David Rudovsky, Esquire (Argued)
Kairys, Rudovsky, Epstein,
 Messing & Rau
924 Cherry Street
5th Floor
Philadelphia, PA 19107
 Counsel for Appellee

L. Rostaing Tharaud, Esquire
 (Argued)
Marshall, Dennehey, Warner,
 Coleman & Goggin
1845 Walnut Street
Philadelphia, PA 19103
 Counsel for Appellants

Catherine Hanssens, Esq.
Lambda Legal Defense & Education
 Fund
120 Wall Street
Suite 1500
New York, NY 10005
 Counsel for Amicus-Appellee

OPINION OF THE COURT

MANSMANN, Circuit Judge.

This interlocutory appeal arises from a denial of the defendants' motion for summary judgment on qualified immunity grounds.1 At issue is whether police officers' threat to disclose the suspected sexual orientation of an arrestee to his family member violated the young man's

_____

1. We exercise plenary review over a District Court's order granting summary judgment on the basis of qualified immunity. The plaintiff, as the non-moving party, is entitled to every favorable inference that can be drawn from the record. Bartholomew v. Commonwealth of Pennsylvania, No. 99-1755, 2000 WL 1101180 (3d Cir. Aug. 7, 2000); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir . 1997).

Some facts are undisputed. Where discr epancies exist, we relate the plaintiff 's version.

2

constitutional right to privacy. We will affirm the order of the District Court because the law is clearly established that matters of personal intimacy are pr otected from threats of disclosure by the right to privacy and at least one of the officers involved was aware that his conduct was knowingly violative of that right.

I.

On April 17, 1997, 18-year old Marcus W ayman and a 17-year old male friend were parked in a lot adjacent to a beer distributor. The car and its occupants were observed by the defendant police officer, F. Scott Wilinsky. Wilinsky was concerned about previous burglaries of the beer distributor and was suspicious of the fact that the headlights on the car were out. Wilinsky called for back-up and, shortly thereafter, Officer Thomas Hoban, the second defendant, arrived at the scene.

The officers' investigation did not show any sign of a break-in at the business, but it was appar ent to the officers that the young men had been drinking alcohol. The boys were also evasive when asked what they wer e doing in the parking lot. When an eventual search uncover ed two condoms, Wilinsky questioned whether the boys were in the parking lot for a sexual assignation. Wilinsky testified that both Wayman and his companion eventually acknowledged that they were homosexuals and were in the parking lot to engage in consensual sex, but we note that the 17-year old denied making such admissions.

The two boys were arrested for underage drinking and were taken to the Minersville police station. At the station, Wilinsky lectured them that the Bible counseled against homosexual activity. Wilinsky then war ned Wayman that if Wayman did not inform his grandfather about his homosexuality that Wilinsky would take it upon himself to disclose this information. After hearing this statement, Wayman confided to his friend that he was going to kill himself. Upon his release from custody, W ayman committed suicide in his home.

Wayman's mother, Madonna Sterling, as executrix of her son's estate, filed suit under 42 U.S.C. S 1983 against the

3

Borough of Minersville, Wilinsky and Hoban, as individuals and in their capacity as police officers, and the Chief of Police of Minersville. The complaint alleged that the officers and the borough violated Wayman's Fourth Amendment right against illegal arrest, his Fourteenth Amendment rights to privacy and equal protection and the laws and the Constitution of the Commonwealth of Pennsylvania.

Following discovery, the defendants filed a motion for summary judgment. The District Court denied summary judgment on the right to privacy, state law and municipal liability claims, but granted the motion with r espect to the Fourth Amendment claim that the arrest of W ayman was without probable cause. The court further ruled that the officers were not entitled to qualified immunity since their conduct violated Wayman's clearly established right to privacy as protected by the Constitution.

Officers Hoban and Wilinsky filed notices of appeal consistent with our authority to hear interlocutory appeals on the issue of qualified immunity. Mitchell v. Forsyth, 472 U.S. 511 (1985). It is this issue alone which draws our attention at this time.

II.

We have previously set forth the analytical framework for deciding qualified immunity claims. First, we must determine if the plaintiff has alleged a deprivation of a clearly established constitutional right. Assaf v. Fields, 178 F.3d 170, 174 (3d Cir. 1999). A right is clearly established if its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right. Kornegay v. Cottingham, 120 F.3d 392, 396 (3d Cir. 1997). If a violation exists, the immunity question focuses on whether the law is established to the extent that"the unlawfulness of the action would have been appar ent to a reasonable official." Assaf, 178 F .3d at 174. The status of the right as clearly established and the reasonableness of the official conduct are questions of law. Sharrar, 128 F.3d at 808.

We first ask whether Wayman had a pr otected privacy right concerning Wilinsky's thr eat to disclose his suspected

4

sexual orientation. If the right exists, we then query whether it was clearly established at the time of its alleged violation.

In Griswold v. Connecticut, 381 U.S. 479 (1965), the Supreme Court first acknowledged the individual's constitutional right to privacy. In Griswold, the Court declared that a state law prohibiting use of contraceptives by married couples was unconstitutional because it violated the right to privacy as gleaned from the penumbra of rights established by the Bill of Rights. Id. at 485-86. The Griswold decision validated a dissent written forty years earlier by Justice Brandeis in Olmsted v. United States, 277 U.S. 438, 478 (1928), which described the privacy right as "the right to be let alone -- the most compr ehensive of rights and the right most valued by civilized men. T o protect that right, every unjustifiable intrusion of the government upon the privacy of an individual .. . must be deemed a [constitutional] violation." Id. at 478 (Brandeis, J., dissenting).

The boundaries of the right to privacy, however , have not been clearly delineated.2 In Griswold, the majority placed heavy emphasis on the intimate relationship of husband and wife in deciding that personal decisions r elating to marriage are free from unjustified government interference. Later, however, the Court recognized that the right of privacy inured to the individual beyond the marital state. In Eisenstadt v. Baird, 405 U.S. 438 (1972), the Court invalidated a Massachusetts law that made it a felony to give anyone other than a married person contraceptive medicines or devices. The Eisenstadt majority held that the right to privacy is not limited to certain r elationships:

> If under Griswold the distribution of contraceptives to married persons cannot be prohibited, a ban on distribution to unmarried persons would be equally

_____

2. The privacy right has been extended to activities relating to marriage, Loving v. Virginia, 388 U.S. 1, 12 (1967); procreation, Skinner v. Oklahoma, 316 U.S. 535, 541-42 (1942); contraception, Eisenstadt, 405 U.S. 438, 453 (1972); family relationships, Prince v. Massachusetts, 321 U.S. 158, 166 (1944); child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510 (1925).

> impermissible. It is true that in Griswold  the right of
> privacy inhered in the marital relationship. Yet the
> marital couple is not an independent entity with a
> mind and heart of its own, but an association of two
> individuals each with separate intellectual and
> emotional makeup. If the right of privacy means
> anything, it is the right of the individual, married or
> single, to be free from unwarranted gover nmental
> intrusion into matters so fundamentally affecting a
> person as the decision whether to bear or beget a child.

Id. at 453 (citations omitted).

A year later in Roe v. Wade, 410 U.S. 113 (1973), the
Court observed that there is "a right of personal privacy, or
a guarantee of certain areas or zones of privacy," protected
by the Constitution. Id. at 152. This guarantee of personal
privacy, covers "only personal rights that can be deemed
`fundamental' or `implicit in the concept of ordered liberty.' "
Id. (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)).

The constitutional right to privacy was further r efined in
Whalen v. Roe, 429 U.S. 589 (1977). In Whalen, the
constitutionality of a New York statute which required that
the state be provided with a copy of pr escriptions for
certain drugs was challenged by physicians and patients.
While the statute's validity was ultimately upheld, the
Court held that the constitutional right to privacy respects
not only an individual's autonomy in intimate matters, but
also an individual's interest in avoiding divulgence of highly
personal information. Id. at 599–600. This sentiment was
reaffirmed in Nixon v. Administrator of General Services,
433 U.S. 425 (1977), wherein the Court, quoting Whalen,
429 U.S. at 599, acknowledged that "[o]ne element of
privacy has been characterized as the individual interest in
avoiding disclosure of personal matters." Nixon, 433 U.S. at
457.

We recognize that the Supreme Court has not definitively
extended the right to privacy to the confidentiality of one's
sexual orientation. Indeed, a later case gives us pause. In
Bowers v. Hardwick, 478 U.S. 186 (1986), the Supreme
Court overturned a decision of the Court of Appeals of the
Eleventh Circuit that had invalidated a Geor gia statute that

6

made consensual homosexual sodomy a criminal of fense. The majority rejected the claim that the Constitution confers a "federal right upon homosexuals to engage in sodomy." Id. at 192.

While Bowers indicates that the Court is r esistant to bestowing the protection of the Constitution on some sexual behavior, its ruling focused on the practice of homosexual sodomy and is not determinative of whether the right to privacy protects an individual fr om being forced to disclose his sexual orientation. In other wor ds, the decision did not purport to punish homosexual status. Such a determination would in fact be contrary to the Court's holding in Robinson v. California , 370 U.S. 660 (1962), that the Eighth and Fourteenth Amendments forbid punishment of status as opposed to conduct. Id.  at 667. We do not read Bowers as placing a limit on privacy protection for the intensely personal decision of sexual pr eference.3

Our jurisprudence takes an encompassing view of information entitled to a protected right to privacy. "The right not to have intimate facts about one's life disclosed without one's consent . . . is a venerable one whose constitutional significance we have recognized." Bartnicki v. Vopper, 200 F.3d 109, 122 (3d Cir . 1999), cert. granted, 120 S. Ct. 2716 (2000).

First, in United States v. Westinghouse Electric Corp., 638 F.2d 570 (3d Cir. 1980), we held that private medical information is "well within the ambit of materials entitled to

_____

3. In Walls v. City of Petersburg, 895 F.2d 188 (4th Cir. 1990), the Court of Appeals for the Fourth Circuit examined the law of privacy in the context of a police background questionnair e which asked if the applicant ever had same sex relations. The court of appeals relied on the Supreme Court's refusal to find in Bowers that the privacy right protected homosexual sodomy in deciding that the question was not repugnant to that right.

We part company with our sister court's ruling because the court, without discussion, applied Bowers as contr olling on the issue of forced disclosure of sexual orientation despite the fact that Bowers focused on whether a state could constitutionally prohibit certain consensual homosexual conduct. Neither Bowers nor Walls inform the issue before us.

7

privacy protection," in part because it concerns intimate facts of a personal nature. Id. at 577. We cautioned, however, that the right is not absolute. Public health or like public concerns may justify access to infor mation an individual may desire to remain confidential. In examining right to privacy claims, we, therefore, balance a possible and responsible government interest in disclosure against the individual's privacy interests. Id.

In Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 110 (3d Cir. 1987), we held that questions posed concerning medical, financial and behavioral information relating to whether police officer applicants were capable of working in stressful and dangerous positions did not unconstitutionally infringe on the applicant's privacy rights, but determined that there were inadequate safeguards on unnecessary disclosure of the information obtained. We observed that "[i]t would be incompatible with the concept of privacy to permit protected infor mation . . . to be publicly disclosed." Id. at 118. In perfor ming the necessary balancing inquiry, we looked to the individual's privacy expectation and concluded that "[t]he mor e intimate the information, the more justified the expectation that it will not be subject to public scrutiny." Id. at 112–13.

Next, in Doe v. Southeastern Pennsylvania Transportation Authority, 72 F.3d 1133 (3d Cir. 1995), a public employee brought a section 1983 action for violations of his right to privacy when the employer discovered, thr ough records of drug purchases made through the employee health program, that the employee had AIDS. After weighing certain factors to determine whether the disclosure constituted an actionable invasion of privacy, we determined that the public employer's need to access the prescription records for purposes of monitoring the health plan outweighed the employee's interest in keeping his drug purchases confidential. Id. at 1143. We arrived at this conclusion, however, only after identifying the government's interest in the information as "genuine, legitimate and compelling." Id. at 1141.

Most recently, in Gruenke v. Seip, No. 98–2041, 2000 WL 1183064 (3d Cir. August 21, 2000), a high school swim team coach, suspecting that a teenage team member was

8

pregnant, required the young woman to take a pregnancy test. The young woman and her mother filed a section 1983 action claiming inter alia that the pr egnancy test unconstitutionally interfered with the daughter's right to privacy regarding personal matters. W e decided that the daughter's claim "fell squarely within the contours of the recognized right to be free from disclosure of personal matters as outlined in Whalen v. Roe" and held that the fact that the coach compelled the student to take the test, coupled with an alleged failure to take appr opriate steps to keep the information confidential infringed the girl's right to privacy. Id. at *9. Significant to today's matter, we determined that this type of conduct was not objectively reasonable under the law and could not entitle the coach to immunity from suit. Id.

We thus carefully guard one's right to privacy against unwarranted government intrusion. It is difficult to imagine a more private matter than one's sexuality and a less likely probability that the government would have a legitimate interest in disclosure of sexual identity. 4

We can, therefore, readily conclude that Wayman's sexual orientation was an intimate aspect of his personality entitled to privacy protection under Whalen . The Supreme Court, despite the Bowers decision, and our court have clearly spoken that matters of personal intimacy ar e safeguarded against unwarranted disclosur e.

_____

4. While we have not previously confr onted whether forced disclosure of one's sexual orientation would be protected by the right to privacy, we agree with other courts concluding that such information is intrinsically private. See Powell v. Scrivner, 175 F .3d 107, 111 (2d Cir. 1999) ("the excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter , is really beyond debate"); Bloch v. Ribar, 156 F.3d 673, 685 (6th Cir. 1998) (publicly revealing information regarding sexuality and choices about sex exposes an aspect of our lives that we regard as personal and private); Eastwood v. Dept. of Corrections, 846 F.2d 627, 631 (10th Cir. 1998) (right to privacy "is implicated when an individual is forced to disclose information regarding personal sexual matters"); Thorne v. City of El Segundo, 726 F.2d 459, 468 (9th Cir. 1980) (the interest raised in the privacy of sexual activities
is within the zone of privacy protected by the Constitution).

9

The zone of privacy, while clearly established in matters of personal intimacy, is not absolute. If ther e is a government interest in disclosing or uncovering one's sexuality that is "genuine, legitimate and compelling," Doe v. SEPTA, 72 F.3d at 1141, then this legitimate interest can override the protections of the right to privacy. In this instance, however, no such government interest has been identified. Indeed, Wilinsky conceded he would have no reason to disclose this type of sensitive infor mation.

Before we can definitely conclude that a constitutional tort has occurred, however, we must further ask whether Wilinsky's threat of disclosur e, rather than actual disclosure, constituted a violation of W ayman's right to privacy.

Cases discussing actionability of threats to violate constitutional rights appear to follow one of two directions. Simply put, threats accompanied by a "chilling effect" that deny or hinder the exercise of a constitutional right have been deemed cognizable, see e.g., Citizens Action Fund v. City of Morgan, 154 F.3d 211, 216 (5th Cir. 1998), opinion withdrawn on denial of rehearing, 172 F .3d 923 (5th Cir. 1999) ("threats of unconstitutionally enfor cing laws against individuals can lead to chilling effect upon speech, silencing voices and opinions which First Amendment was meant to protect"); Lamar v. Steele, 693 F .2d 559, 562 (5th Cir. 1982) (contested state action aimed at precluding plaintiff 's participation in future litigation implicated First Amendment's protections of free speech and right to petition), while threats arising in constitutional contexts without a deterrent effect could not substantiate a section 1983 claim. See e.g. Schlessinger v. Salimes, 100 F.3d 519 (7th Cir. 1996) (threat to arrest not cognizable); Balliet v. Whitmere, 626 F. Supp. 219 (M.D. Pa. 1986), aff 'd, 800 F.2d 1130 (3d Cir. 1986) (threat to remove child from home not a constitutional violation).

A threat to disclose implicating privacy rights does not, to us, fit into either category. The threat of disclosure does not have a chilling effect since the right to privacy is pervasive, i.e., no particular action is deterred. Instead, the essence of the right to privacy is in "avoiding disclosur e of personal matters," Whalen, id. at 599. The threat to breach some

10

confidential aspect of one's life then is tantamount to a violation of the privacy right because the security of one's privacy has been compromised by the thr eat of disclosure. Thus, Wilinsky's threat to disclose W ayman's suspected homosexuality suffices as a violation of W ayman's constitutionally protected privacy inter est.

III.

We next address whether Officers W ilinsky and Hoban could reasonably believe that their conduct in regard to Wayman was lawful in light of the established law and the information in their possession. Hunter v. Bryant, 502 U.S. 224, 227 (1991).

A. Officer Hoban

Officer Hoban claims that he is entitled to qualified immunity because no evidence connected him to the questioning of Wayman, or any other action that would constitute a violation of Wayman's constitutional rights.

An interlocutory appeal, however, does not lie from a denial of qualified immunity when the claim is one of factual insufficiency. Behrens v. Pelletier, 516 U.S. 299, 313 (1996). Stated another way -- an "I didn't do it" argument is not recognizable in this context. Reyes v. Sazan, 168 F.3d 158, 161 (5th Cir. 1999).

Thus, we are without jurisdiction to discuss Hoban's qualified immunity argument.5

B. Officer Wilinsky

Similarly, we do not discuss whether Wilinsky made the alleged statement concerning the threatened disclosure of Wayman's homosexuality to Wayman's grandfather.6 To reiterate, our jurisdiction to hear interlocutory qualified

_____

5. Additionally, Hoban did not argue to the District Court that he is factually remote from the allegations of the complaint.

6. The fact that Wilinsky so advised W ayman of his intent to disclose was conceded at oral argument.

11

immunity appeals exists only to the extent that the denial turns on an issue of law. Johnson v. Jones , 515 U.S. 304, 313 (1995). Where, however, the denial turns on the sufficiency of the evidence, an appeal will not lie until the District Court enters final judgment in the case. In re Montgomery County, 215 F.3d 367 (3d Cir . 2000). Thus, Wilinsky could not appeal the denial of qualified immunity on the grounds he did not make the statement. Otherwise, his appeal would suffer the same fate as Hoban's "I didn't do it" appeal.

We turn then to whether Wilinsky should have known that his conduct, as described by the plaintif f, violated clearly established law. As previously discussed, by Wilinsky's own acknowledgment, disclosur e of Wayman's suspected homosexuality would be a matter of private concern. Wilinsky stated that because W ayman was 18, there was no reason for him to inter fere with Wayman's family's awareness of his sexual orientation. In addition, Wilinsky testified that he did not include suspicion of homosexual activity in his police report because of the confidential nature of the information. Obviously, then, Wilinsky was aware that one's sexual orientation is intrinsically personal and no compelling reason to disclose such information was warranted. Because the confidential and private nature of the information was obvious, and because the right to privacy is well-settled, the concomitant constitutional violation was apparent notwithstanding the fact that the very action in question had not pr eviously been held to be unlawful. See Gruenke v. Seip , 225 F.3d 290, 299 (3d Cir. 2000), quoting Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). Accordingly, W ilinsky could not reasonably have believed that his questioned conduct was lawful in light of the established law protecting privacy rights.7

_____

7. Wilinsky offers that, as a small town police officer, his role has parental overtones, thus, reducing the citizen's expectation of privacy when they encounter him in an official capacity. W e mention this only to note our disagreement with the concept that the breadth of one's constitutional rights can somehow be diminished by demographics.

12

IV.

For the reasons stated above, we will affir m the order of the District Court denying summary judgment on the grounds of qualified immunity.

13

STAPLETON, Circuit Judge, dissenting:

I respectfully dissent.

In order for law to be "clearly established" for purposes of qualified immunity, there must be pre-existing authority which rules out the possibility that a reasonable official in the defendant's position could have believed his conduct to be lawful. Paff v. Kaltenbach, 204 F .3d 425, 436 (3d Cir. 2000). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." See Gruenke v. Seip, 225 F.3d 290, 299 (3rd Cir. 2000), quoting Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). Here, prior to the events giving rise to this case, there was no Supreme Court case law addr essing either the issue of whether there is a constitutionally pr otected right of privacy in one's sexual orientation, or the issue of whether a mere threat to disclose constitutionally protected private information can constitute a constitutional tort. Of the decisions of the inferior courts, only one addr essed the former issue, Walls v. City of Petersburg, 895 F.2d 188 (4th Cir. 1990), and it held that there is no constitutionally protected privacy interest in one's sexual orientation. With respect to the second issue, there was no case holding that an unexecuted threat to disclose private infor mation can constitute a violation of the right to privacy, and the case law dealing with threats to violate other constitutional rights provided no affirmative support for the proposition that threats to violate a right of privacy wer e actionable. Thus, it cannot be said that the unlawfulness of Officer Wilinsky's conduct was apparent at the time it occurred. It follows that he is entitled to qualified immunity.

Before elaborating on our differences, I note my agreement with much that the Court has today said. Though we have not addressed the issue befor e, I agree that, based on the precedents of this Court, W ayman did possess a privacy interest in his sexual orientation. Our previous decisions in Westinghouse  and FOP have understood the right to privacy to encompass all"intimate facts of a personal nature." See United States v. Westinghouse, 638 F.3d 570, 577 (3d Cir. 1980); Fraternal

14

Order of Police v. City of Philadelphia, 812 F.2d 105, 112–13 (3d Cir. 1987). I think it fair to say that our society regards a person's sexual orientation as intimate infor mation of a personal nature and, accordingly, r ecognizes a reasonable and legitimate expectation of privacy in that infor mation.1

The alleged action of Wilinsky primarily at issue here is his threat to disclose private information.2 It is clear that while Officer Wilinsky threatened to disclose Wayman's suspected sexual orientation, he did not in fact do so. Even so, I am in agreement with the Court that W ilinsky's threat to disclose Wayman's suspected sexual orientation violated the Constitution. I reach this conclusion, however, by a different route than the Court. I believe that a threat to disclose private information violates the constitutional right to privacy only where, as here, an officer with no legitimate interest in effecting disclosure makes a threat, the intended and foreseeable effect of which is involuntary self-disclosure.

Essentially a blackmail mechanism, Wilinsky's"tell now or I'll tell later" threat had the for eseeable effect of forcing disclosure by Wayman without any further action on the part of Wilinsky. It would make little sense to condone an officer's acts effecting disclosure simply because the victim is made the instrument of the disclosure. It makes more sense to examine the culpability of the conduct and ask

_____

1. While I consider it a closer issue than my colleagues do, I also ultimately reject the analysis proffered in Walls v. City of Petersburg, 895
F.2d 188, 193 (1990). Unlike the Walls court, I do not read the Supreme Court's opinion in Bowers as intended to af fect cases arising under the disclosure prong of Whalen. See Bowers v. Hardwick, 478 U.S. 186 (1986); Whalen v. Roe, 429 U.S. 589 (1977).

2. The argument that the questioning  violated Wayman's constitutional right to privacy is unpersuasive. As the Court's opinion notes, the two young men were found hiding in a parked jeep on the premises of a closed beer distributor in a high-crime area. They gave contradictory and evasive explanations for their presence. Officer Wilinsky apparently believed some criminal activity may have been afoot, and did not act unreasonably by questioning the young men tofind out why they were there. As the Court observes, if there is a legitimate governmental interest in uncovering or disclosing a person's sexual orientation, that interest overrides the protections of the right to privacy.

15

whether an officer completed steps reasonably designed to effect disclosure with the intent that disclosure would result. In short, I believe Wilinsky's threat itself was a violation of Wayman's right to privacy because Wilinsky, acting as a state officer, knowingly engaged in conduct reasonably calculated to effect the involuntary disclosure of Wayman's sexual orientation.

Thus, I agree with the Court's decision that a constitutional violation occurred. I part ways with my colleagues, however, on whether the unconstitutionality of Wilinsky's conduct was clearly established by the pre-existing case law.

First, a person's right to privacy in his or her sexual orientation simply was not clearly established in April of 1997. Only one opinion directly addressing the issue existed at the time of Wilinsky's conduct, and that opinion held that no right to privacy exists in a person's sexual orientation.3  See Walls, 895 F.2d at 193 (rejecting, on the authority of Bowers v. Hardwick, 478 U.S. 186 (1986), the proposition that a city employee's right to privacy was violated by her being requiring to state whether she had "ever had sexual relations with a person of the same sex"). With the relevant case law in this state, I am unable to conclude that no reasonable officer in W ilinsky's position could have believed his conduct to be consistent with the Constitution.

_____

3. I find unpersuasive the majority's citation of several other cases in footnote four. Three of these cases wer e decided after the events at issue
here took place. As the majority correctly notes, the applicable test looks
to the time of the right's alleged violation. See Conn v. Gabbert, 526 U.S.
286, 290 (1999). I cannot conclude that our law was clearly established in 1997 based upon opinions issued after that date. Thorne, the sole remaining case, involved an inquiry into the explicit factual details of a job applicant's sexual history and miscarriage, including the identities of
her past sexual partners. See Thorne v. City of El Segundo, 726 F.2d 459, 462 & n.1 (9th Cir. 1980). While Thorne was decided in 1983, it cannot be viewed as having clearly established a privacy right in a person's sexual orientation as of 1997. The Fourth Circuit's decision in Walls addressed the issue squar ely in 1990 and reached the opposite conclusion based primarily on Bowers, a Supr eme Court precedent decided three years after Thorne. Thus, the law in this area was, at best, unclear.

16

Second, I must differ with the Court when it finds that the right to privacy is generally infringed by thr eats to violate that right and then concludes that this rule is clearly established. Where, as with the rights of free exercise and free access to the courts, the exercise of a constitutional right requires a volitional act on the part of the holder of the right, courts have taken the r ealistic view that threats alone may impermissibly chill the exercise of the right and, accordingly, may give rise to liability. Outside the narrow confines of rights specifically protecting free exercise or access, however, courts have held that threats to violate constitutional rights are not generally actionable as constitutional violations. See, e.g. Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991); Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989); King v. Olmstead County, 117 F.3d 1065, 1067 (8th Cir. 1997); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). The Court cites no case in which a threat to violate a right to privacy has been held to violate the Constitution, and I know of none. While, as I have indicated, I would be willing to hold that this particular threat did violate Wayman's constitutional right to privacy because it had the foreseeable consequence of effecting disclosure without further action on the part of Wilinsky, I must acknowledge that I have found no precedent anticipating the formation of such a rule. The state of the case law dealing with threats to violate the Constitution is thus an independent reason for sustaining W ilinsky's qualified immunity.

I would remand to the District Court with instructions to dismiss the count of Sterling's claim alleging a violation of the right to privacy.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

17