895 F.2d 188
 52 Fair Empl.Prac.Cas. 39, 52 Empl. Prac.
Dec. P 39,602,
58 USLW 2523, 5 Indiv.Empl.Rts.Cas. 455
 Teyonda N. WALLS, Plaintiff-Appellant,
v.
CITY OF PETERSBURG, a Virginia Municipal Corporation;
Richard M. Brown, individually and in his official capacity
as City Manager of the City of Petersburg; Lawrence R.
Nowery, individually and in his official capacity as the
Chief of the Bureau of Police of the City of Petersburg,
Virginia, Defendants-Appellees.
 No. 89-2357.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 30, 1989.
Decided Feb. 6, 1990.
 
 Mark Sheridan Brennan (Stephen W. Bricker, Bremner, Baber & Janus, Richmond, Va., on brief), for plaintiff-appellant.
 Michael Paul Falzone (Charles F. Witthoefft, Dana B. Sykes, Brian K. Jackson, Hirschler, Fleischer, Weinberg, Cox & Allen, P.C., Richmond, Va., on brief), for defendants-appellees.
 Before ERVIN, Chief Judge, WIDENER, Circuit Judge, and YOUNG, Senior District Judge for the District of Maryland, sitting by designation.
 ERVIN, Chief Judge:
 
 
 1
 In this action, the plaintiff, Teyonda N. Walls, alleged that the defendants violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. Secs. 2000e et seq., and 42 U.S.C. Sec. 1983 in dismissing her from her position with the City of Petersburg ("the City"). Her Title VII cause of action stated that her discharge was racially discriminatory because the City's background questionnaire had a disparate discriminatory impact on blacks such as herself. In her Section 1983 claim, Walls alleged that she was discharged in violation of her constitutionally protected right to privacy, freedom of association, and due process of law.
 
 
 2
 Walls now appeals from the district court's grant of summary judgment for the defendants on both causes of action. For the reasons discussed below, we affirm.
 
 I.
 
 3
 Walls was hired as the administrator of the City of Petersburg's "Community Diversion Incentive Program" ("CDI") in December 1985. This program provides alternative sentencing for non-violent criminals. In her position, Walls had financial responsibility for the CDI program, oversaw restitution payments, had regular contact with convicted criminals, and was in a position to make recommendations concerning sentencing.
 
 
 4
 In July 1986, the administration of the program was transferred from the City Manager's Office to the City's Bureau of Police. Starting at that time, defendant Lawrence R. Nowery was named Project Administrator and Captain William A. Vaughan became Walls' immediate supervisor. After the transfer took place, the police department required all CDI employees to undergo the same background check as its other employees. The City had never required background checks of employees working with the CDI program when it was administered by the City Manager's Office.
 
 
 5
 At the time of the transfer, Walls did not complete a background questionnaire. Upon discovering this in March 1988, Nowery and Vaughan notified her that she would be required to fill out the questionnaire. Walls refused to do so, objecting specifically to four questions:
 
 
 6
 Question 12: Has any member of your immediate family (father, mother, brother, sister, husband, wife, father-in-law, mother-in-law) ever been arrested and/or convicted of a felony, misdemeanor, or other violation other than a minor traffic violation?
 
 
 7
 Question 30: List all marriages you have had and the present status thereof: If divorced, annulled or separated, give details of date, offending party as decreed by law, and the reason therefore [sic] on a separate sheet of paper.... List every child born to you.
 
 
 8
 Question 40: Have you ever had sexual relations with a person of the same sex?
 
 
 9
 Question 43: Debts: List all outstanding debts or judgments against you or your spouse or for which you are the co-maker?
 
 
 10
 Because of her refusal to fill out the questionnaire, Nowery suspended Walls without pay and recommended to City Manager Richard M. Brown that Walls be terminated. After determining that the current administrative policy concerning background checks did not apply to Walls, Brown ordered Nowery to reinstate her with backpay. At the same time, however, he promulgated a new policy requiring all current employees in Walls' position to fill out the questionnaire. Walls still refused to comply, and Nowery again recommended termination. On March 18, 1988, Brown terminated her for failure to complete the background questionnaire.
 
 II.
 
 11
 Summary judgment is proper where there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). There is no issue for trial unless there is "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986). The standard of our review is de novo. Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1127 (4th Cir.1987).
 
 III.
 
 12
 A facially neutral employment practice having a disparate adverse impact upon blacks is unlawful under Title VII unless the employer can prove that the practice is demonstrably related to the job performance. In the seminal case in this area, Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971), the Supreme Court held:[Title VII] proscribes not only overt discrimination but also practices that are fair in form, but discriminatory in operation. The touchstone is business necessity. If an employment practice which operates to exclude Negroes cannot be shown to be related to job performance, the practice is prohibited.
 
 
 13
 Id. at 431, 91 S.Ct. at 853, 28 L.Ed.2d at 164.
 
 
 14
 The Supreme Court has developed a three-part analysis of disparate impact claims brought under Title VII. First, to establish a prima facie case of discrimination, a plaintiff must show that the facially neutral employment practice had a significantly discriminatory impact. Connecticut v. Teal, 457 U.S. 440, 446, 102 S.Ct. 2525, 2530, 73 L.Ed.2d 130, 137 (1982). Second, if the prima facie case is made, "the employer must then demonstrate that 'any given requirement [has] a manifest relationship to the employment in question,' in order to avoid a finding of discrimination." Id. at 446-447, 102 S.Ct. at 2530-2531 (quoting Griggs ). Third, "(e)ven in such a case, however, the plaintiff may prevail, if he shows that the employer was using the practice as a mere pretext for discrimination." Id. at 447, 102 S.Ct. at 2530.
 
 
 15
 Walls, in her response to the defendants' motion for summary judgment, submitted statistical evidence showing that blacks are much more likely statistically to have "negative" responses to the objectionable questions than white employees, and that they would therefore be much more likely to be subject to negative personnel actions as a result of the background questionnaire. She did not, however, offer any connection between these statistics and any personnel decisions by the City. Nor did she submit any evidence showing that the City had, in fact, discriminated against blacks because of their answers to these questions.
 
 
 16
 A plaintiff may use statistical evidence to establish a prima facie violation of Title VII. New York City Transit Authority v. Beazer, 440 U.S. 568, 584, 99 S.Ct. 1355, 1365, 59 L.Ed.2d 587 (1979). The Supreme Court has recently held, however, that "the plaintiff's burden in establishing a prima facie case goes beyond the need to show that there are statistical disparities in the employer's work force." Watson v. Ft. Worth Bank & Trust, 487 U.S. 977, ----, 108 S.Ct. 2777, 2788, 101 L.Ed.2d 827, 845 (1988) (O'Connor, J., plurality opinion of four justices; Justice Kennedy not participating), quoted affirmatively in Wards Cove Packing Co. v. Atonio, --- U.S. ----, 109 S.Ct. 2115, 2124, 104 L.Ed.2d 733 (1989) (5-4 decision with Justice Kennedy participating). Causation must also be proved; "the plaintiff must offer statistical evidence of a kind and degree sufficient to show that the practice in question has caused the exclusion of applicants for jobs or promotions because of their membership in a protected group." Watson, 487 U.S. at ---- - ----, 108 S.Ct. at 2788-79, 101 L.Ed.2d at 845; see also Wards Cove Packing Co., --- U.S. at ----, 109 S.Ct. at 2125, 104 L.Ed.2d at 751 (plaintiffs "will also have to demonstrate that the disparity they complain of is the result of ... the employment practices that they are attacking").
 
 
 17
 Under Watson and Wards Cove Packing, Co., absent proof of causation, Walls has failed to satisfy her prima facie burden. She bases her claim on the speculation that, had she filled out the form, she would have been subject to some form of adverse job action based on her answers and that, in general, blacks would be subject to such action disproportionately to whites based on a statistical analysis of their likely responses. This is completely speculative. She offers no evidence that anyone, black or white, has ever been terminated or otherwise adversely affected as a result of their answers to the questionnaire. Speculation as to the potential for disparate impact cannot serve as evidence of such impact itself.
 
 IV.
 
 18
 Walls' complaint also alleges that the City's requiring her to answer these questions violates her constitutional rights to privacy, freedom of association, and due process of law under 42 U.S.C. Sec. 1983. Section 1983 provides a remedy to those whose rights have been violated under color of state law. We find that these questions do not infringe in any way upon her freedom of association or her right of due process. Walls has not alleged any facts supporting her claim that the questionnaire violated her right of due process under the fourteenth amendment. In addition, there is no indication in the record that answering these questions would inhibit or limit her associations with others. Walls' right to privacy claim, however, deserves greater attention.
 
 A.
 
 19
 The constitutional right to privacy extends to two types of interests: "one is the individual interest in avoiding disclosure of personal matters, and another is the interest in independence in making certain kinds of important decisions." Whalen v. Roe, 429 U.S. 589, 599-600, 97 S.Ct. 869, 876-877, 51 L.Ed.2d 64 (1977). Areas protected within these interests include matters relating to marriage, Loving v. Virginia, 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967); procreation, Skinner v. Oklahoma ex rel. Williamson, 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942); contraception, Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972); family relationships, Prince v. Massachusetts, 321 U.S. 158, 64 S.Ct. 438, 88 L.Ed. 645 (1944); and child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). See Paul v. Davis, 424 U.S. 693, 713, 96 S.Ct. 1155, 1166, 47 L.Ed.2d 405, 421 (1976); Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973).
 
 
 20
 As the first step in determining whether the information sought is entitled to privacy protection, courts have looked at whether it is within an individual's reasonable expectations of confidentiality. The more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny. Fraternal Order of Police, Lodge 5 v. Philadelphia, 812 F.2d 105, 112-113 (3d Cir.1987). The right to keep one's beliefs and thoughts and emotions and sensations secure, and, as against the government, private was described by Justice Brandeis as "the right to be let alone--the most comprehensive of rights and the right most valued by civilized man." Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting). Personal, private information in which an individual has a reasonable expectation of confidentiality is protected by one's constitutional right to privacy.
 
 
 21
 The right to privacy, however, is not absolute. If the information is protected by a person's right to privacy, then the defendant has the burden to prove that a compelling governmental interest in disclosure outweighs the individual's privacy interest. Carey v. Population Services International, 431 U.S. 678, 686, 97 S.Ct. 2010, 2016, 52 L.Ed.2d 675 (1977); Fraternal Order of Police, 812 F.2d at 110; Ponton v. Newport News School Bd., 632 F.Supp. 1056, 1061 (E.D.Va.1986). As the Supreme Court has recognized, "compelling" is the key word. Carey, 431 U.S. at 686, 97 S.Ct. at 2016, 52 L.Ed.2d at 685. When the decision or the information sought is "fundamental," regulation "may be justified only by compelling state interests, and must be narrowly drawn to express only those interests." Id.; see also Gibson v. Florida Investigation Committee, 372 U.S. 539, 546, 83 S.Ct. 889, 893, 9 L.Ed.2d 929, 935-936 (1963) (Investigation Committee sought to subpoena membership list of Miami NAACP; "[w]here there is a significant encroachment upon personal liberty, the State may prevail only upon showing a subordinating interest which is compelling.").
 
 
 22
 A few cases discuss the extent to which employees of a police department can be questioned about their personal life. In Shuman v. City of Philadelphia, 470 F.Supp. 449 (E.D.Pa.1979), a police officer had been fired for refusing to answer questions concerning an alleged off-duty affair. Weighing the state's interest in disclosure against the privacy needs of the individual, the district court held that this inquiry was a violation of the officer's right to privacy, absent a showing that his private, off-duty personal activities have an impact upon his on-the-job performance. Id. at 459. The court stated further:
 
 
 23
 [T]here are ... matters which fall within a protected zone of privacy simply because they are private; "that is, that [they do] not adversely affect persons beyond the actor, and hence [are] none of their business." Ravin v. State, 537 P.2d 494 (Alaska 1976 [1975].... These private matters do not necessarily relate to the exercise of substantive rights, but may simply constitute areas of one's life where the government simply has no legitimate interest. These are the kind of interests aptly characterized by Justice Brandeis as "the right to be let alone." Olmstead v. United States, 277 U.S. 438, 468, 48 S.Ct. 564, 572, 72 L.Ed. 944 (1928) (Brandeis, J., dissenting).
 
 
 24
 Id. at 458-459; see also Thorne v. City of El Segundo, 726 F.2d 459, 469-470 (9th Cir.), cert. denied, 469 U.S. 979, 105 S.Ct. 380, 83 L.Ed.2d 315 (1983) (even the government's heightened interest in the context of police officers did not justify questions concerning an applicant's off-duty sexual relations and history of abortion and/or miscarriage).
 
 
 25
 A Third Circuit case specifically addresses the issue raised here: what type of questions can be asked by a police department as a background check of its employees? In Fraternal Order of Police, Lodge 5 v. Philadelphia, 812 F.2d 105, 112-113 (3d Cir.1987), the Philadelphia Police Department required policemen applying for positions in its Special Investigations Unit to complete a questionnaire asking about their physical and mental condition, their financial status, their behavior and habits, and any arrests of their family members. The Third Circuit concluded that "although most of the information requested ... is entitled to privacy protection, the questions are specific, relevant, and permissible because the City's need for the information overrides the applicants' rights not to disclose it." Id. at 117.
 
 B.
 
 26
 In light of this case law, each question to which Walls objected will be individually discussed below.
 
 Question 40--Homosexual Relations
 
 27
 Walls argues that a party's sexual activities are within the "zone-of-privacy" protected from unwarranted government intrusion. In Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), the Supreme Court "register[ed] [its] disagreement ... that the Court's prior cases have construed the Constitution to confer a right of privacy that extends to homosexual sodomy...." Id. at 190, 106 S.Ct. at 2843, 92 L.Ed.2d at 145. The Court explicitly rejected "the proposition that any kind of private sexual conduct between consenting adults is constitutionally insulated from state proscription." Id. at 191, 106 S.Ct. at 2844, 92 L.Ed.2d at 146. The relevance of this type of question to Walls' employment is uncertain, but because the Bowers decision is controlling, we hold that Question 40 does not ask for information that Walls has a right to keep private.
 
 
 28
 Question 30--Marriages, Divorces, etc., and Children
 
 
 29
 As explained above, a right to privacy protects only information with respect to which the individual has a reasonable expectation of privacy. Fraternal Order of Police, 812 F.2d at 112. Therefore, to the extent that this information is freely available in public records, the police should be able to require Walls to disclose the information in this background questionnaire. However, any details that are not part of the public record concerning a divorce, separation, annulment, or the birth of children are private and thus protected. The City's interests in discovering possible alternative names used by employees and identifying potential conflicts of interests can be satisfied by the information in the public records.
 
 
 30
 We interpret Question 30 to be asking only for information that is available from public records, and therefore hold that it also can be an appropriate part of a background check.
 
 
 31
 Question 12--Arrests or Convictions of Family Members
 
 
 32
 The analysis here is exactly the same as for Question 30. Walls has no reasonable expectation of privacy in this information because it is already part of the public records. Because she would have access in her position to criminal records, this information would be relevant and could be requested in a questionnaire.
 
 Question 43--Financial Information
 
 33
 Financial information like that requested in the questionnaire is protected by a right to privacy. Fraternal Order of Police, 812 F.2d at 115; Barry v. City of New York, 712 F.2d 1554, 1559 (2nd Cir.), cert. denied, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983). Walls asserts that, because of the low level of security required in her job, the City can show no reason for collecting this information.
 
 
 34
 The record indicates, however, that Walls had considerable responsibility as administrator of the CDI program. Because of the nature of her duties, the City contends it was necessary for the City to be aware of Walls' financial position in order to guard against potential corruption. In Barry v. City of New York, 712 F.2d 1554 (2d Cir.), cert. denied, 464 U.S. 1017, 104 S.Ct. 548, 78 L.Ed.2d 723 (1983), the City of New York required all city employees with an annual salary over $25,000 to disclose financial information. The Second Circuit upheld this requirement as "further[ing] a substantial, possibly even a compelling, state interest in deterring corruption and conflicts of interest." Id. at 1560. We agree with the district court's analysis in the present case that if New York can constitutionally cast its financial disclosure net wide enough to cover all city employees over a certain salary, Petersburg may require such information of an employee dealing directly with the sentencing and disposition of criminals.
 
 
 35
 In Fraternal Order of Police, supra, the Third Circuit upheld the required disclosure of all debts over $1000 and all gifts and income by police officers applying for positions to investigate intra-police department corruption. Even though the need for security in Walls' position is not as great as that needed in Fraternal Order of Police, the policy concerns are the same: "[T]he strong public interest in avoiding corruption ... outweighs police officers' limited privacy expectations in this financial disclosure requirement." Fraternal Order of Police, 812 F.2d at 116. Consequently, we hold that the City has demonstrated a compelling interest in this information.
 
 
 36
 One other consideration in weighing the competing interests of the government and the individual is the possibility of unauthorized disclosure of information entitled to privacy protection. United States v. Westinghouse Electric Corp., 638 F.2d 570, 578 (3d Cir.1980). When there are precautions to prevent unwarranted disclosure, an individual's privacy interest is weakened. See, e.g., Nixon v. Administrator of General Services, 433 U.S. 425, 458, 97 S.Ct. 2777, 2797, 53 L.Ed.2d 867 (1977); Taylor v. Best, 746 F.2d 220, 225 (4th Cir.1984) (plaintiff's privacy interest is weakened by psychologist's promise of confidentiality). In this case, the information obtained from the background questionnaire is kept in a private filing cabinet that is locked at night, and only four persons would be authorized to have access to the information.
 
 
 37
 We believe these precautions are reasonable and sufficient; however, if this type of information had been more widely distributed, our conclusions might have been different. In the past few decades, technological advances have provided society with the ability to collect, store, organize, and recall vast amounts of information about individuals in sophisticated computer files. This database capability is already being extensively used by the government, financial institutions, and marketing research firms to track our travels, interests, preferences, habits, and associates. Although some of this information can be useful and even necessary to maintain order and provide communication and convenience in a complex society, we need to be ever diligent to guard against misuse. Some information still needs to be private, disclosed to the public only if the person voluntarily chooses to disclose it.
 
 V.
 
 38
 Under the specific facts of this case, we hold that the City had a compelling interest in this information and exercised sufficient caution in protecting it from further disclosure. The City, therefore, did not violate Walls' constitutional right to privacy. All things considered, the decision of the district court is
 
 
 39
 AFFIRMED.