OPINION OF THE COURT
MANSMANN, Circuit Judge.
This interlocutory appeal arises from a denial of the defendants’ motion for summary judgment on qualified immunity grounds.[1] . At issue is whether police officers’ threat to disclose the suspected sexual orientation of an arrestee to his family member violated the young man’s constitutional right to privacy. We will affirm the order of the District Court because the law is clearly established that matters of personal intimacy are protected from threats of disclosure, by the right to privacy and at least one of the officers involved was aware that his conduct was knowingly vio-lative of that right.
I.
On April 17, 1997, 18-year old Marcus Wayman and a 17-year old male friend were parked in a lot adjacent to a beer distributor. The car and its occupants were observed by the defendant police officer, F. Scott Wilinsky. Wilinsky was concerned about previous burglaries of the beer distributor and was suspicious of the fact that the headlights on the car were out. Wilinsky called for back-up and, shortly thereafter, Officer Thomas Hoban, the second defendant, arrived at the scene.
The officers’ investigation did not show any sign of a break-in at the business, but it was apparent to the officers that the young men had been drinking alcohol. The boys were also evasive when asked what they were doing in the parking lot. When an eventual search uncovered two condoms, Wilinsky questioned whether the boys were in the parking lot for a sexual assignation. Wilinsky testified that both Wayman and his companion eventually acknowledged that they were homosexuals and were in the parking lot to engage in consensual sex, but we note that the 17-year old denied making such admissions.
The two boys were arrested for underage drinking and were taken to the Min-ersville police station. At the station, Wilinsky lectured them that the Bible *193 counseled against homosexual activity. Wilinsky then warned Wayman that if Wayman did not inform his grandfather about his homosexuality that Wilinsky would take it upon himself to disclose this information. After hearing this statement, Wayman confided to his friend that he was going to kill himself. Upon his release from custody, Wayman committed suicide in his home.
Wayman’s mother, Madonna Sterling, as executrix of her son’s estate, filed suit under 42 U.S.C. § 1983 against the Borough of Minersville, Wilinsky and Hoban, as individuals and in their capacity as police officers, and the Chief of Police of Minersville. The complaint alleged that the officers and the borough violated Way-man’s Fourth Amendment right against illegal arrest, his Fourteenth Amendment rights to privacy and equal protection and the laws and the Constitution of the Commonwealth of Pennsylvania.
Following discovery, the defendants filed a motion for summary judgment. The District Court denied summary judgment on the right to privacy, state law and municipal liability claims, but granted the motion with respect to the Fourth Amendment claim that the arrest of Wayman was without probable cause. The court further ruled that the officers were not entitled to qualified immunity since their conduct violated Wayman’s clearly established right to privacy as protected by the Constitution.
Officers Hoban and Wilinsky filed notices of appeal consistent with our authority to hear interlocutory appeals on the issue of qualified immunity. Mitchell v. Forsyth, 472 U.S. 611, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). It is this issue alone which draws our attention at this time.
II.
We have previously set forth the analytical framework for deciding qualified immunity claims. First, we must determine if the plaintiff has alleged a deprivation of a clearly established constitutional right. Assaf v. Fields, 178 F.3d 170, 174 (3d Cir.1999). A right is clearly established if its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right. Kornegay v. Cottingham, 120 F.3d 392, 396 (3d Cir.1997). If a violation exists, the immunity question focuses on whether the law is established to the extent that “the unlawfulness of the action would have been apparent to a reasonable official.” Assaf, 178 F.3d at 174. The status of the right as clearly established and the reasonableness of the official conduct are questions of law. Sharrar, 128 F.3d at 826, 828.
We first ask whether Wayman had a protected privacy right concerning Wilin-sky’s threat to disclose his suspected sexual orientation. If the right exists, we then query whether it was clearly established at the time of its alleged violation.
In Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965), the Supreme Court first acknowledged the individual’s constitutional right to privacy. In Griswold, the Court declared that a state law prohibiting use of contraceptives by married couples was unconstitutional because it violated the right to privacy as gleaned from the penumbra of rights established by the Bill of Rights. Id. at 485-86, 85 S.Ct. 1678. The Griswold decision validated a dissent written forty years earlier by Justice Brandeis in Olmstead v. United States, 277 U.S. 438, 478, 48 S.Ct. 564, 72 L.Ed. 944 (1928), which described the privacy right as “the right to be let alone—the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion of the government upon the privacy of an individual ... must be deemed a [constitutional] violation.” Id. at 478, 48 S.Ct. 564 (Brandéis, J., dissenting).
The boundaries of the right to privacy, however, have not been clearly delineated.[2] *194 In Griswold, the majority placed heavy emphasis on the intimate relationship of husband and wife in deciding that personal decisions relating to marriage are free from unjustified government interference. Later, however, the Court recognized that the right of privacy inured to the individual beyond the marital state. In Eisenstadt v. Baird, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972), the Court invalidated a Massachusetts law that made it a felony to give anyone other than a married person contraceptive medicines or devices. The Eisenstadt majority held that the right to privacy is not limited to certain relationships:
If under Grisivold the distribution of contraceptives to married persons cannot be prohibited, a ban on distribution to unmarried persons would be equally impermissible. It is true that in Gris-wold the right of privacy in question inhered in the marital relationship. Yet the marital couple is not an independent entity with a wind and heart of its own, but an association of two individuals each with separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.
Id. at 453, 92 S.Ct. 1029 (citations omitted).
A year later in Roe v. Wade, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Court observed that there is “a right of personal privacy, or a guarantee of certain areas or zones of privacy,” protected by the Constitution. Id. at 152, 93 S.Ct. 705. This guarantee of personal privacy, covers “only personal rights that can be deemed ‘fundamental’ or ‘implicit in the concept of ordered liberty.’ ” Id. (quoting Palko v. Connecticut, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288 (1937)).
The constitutional right to privacy was further refined in Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64 (1977). In Whalen, the constitutionality of a New York statute which required that the state be provided with a copy of prescriptions for certain drugs was challenged by physicians and patients. While the statute’s validity was ultimately upheld, the Court held that the constitutional right to privacy respects not only an individual’s autonomy in intimate matters, but also an individual’s interest in avoiding divulgence of highly personal information. Id. at 599-600, 97 S.Ct. 869. This sentiment was reaffirmed in Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 53 L.Ed.2d 867 (1977), wherein the Court, quoting Whalen, 429 U.S. at 599, 97 S.Ct. 869, acknowledged that “[o]ne element of privacy has been characterized as ‘the individual interest in avoiding disclosure of personal matters....’” Nixon, 433 U.S. at 457, 97 S.Ct. 2777.
We recognize that the Supreme Court has not definitively extended the right to privacy to the confidentiality of one’s sexual orientation. Indeed, a later case gives us pause. In Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), the Supreme Court overturned a decision of the Court of Appeals of the Eleventh Circuit that had invalidated a Georgia statute that made consensual homosexual sodomy a criminal offense. The majority rejected the claim that the Constitution confers a “fundamental right to homosexuals to engage in consensual sodomy.” Id. at 192,106 S.Ct. 2841.
While Boioers indicates that the Court is resistant to bestowing the protection of the Constitution on some sexual behavior, its ruling focused on the practice of homosex *195 ual sodomy and is not determinative of whether the right to privacy protects an individual from being forced to disclose his sexual orientation. In other words, the decision did not purport to punish homosexual status. Such a determination would in fact be contrary to the Court’s holding in Robinson v. California, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (1962), that the Eighth and Fourteenth Amendments forbid punishment of status as opposed to conduct. Id. at 667, 82 S.Ct. 1417. We do not read Bowers as placing a limit on privacy protection for the intensely personal decision of sexual preference.[3]
Our jurisprudence takes an encompassing view of information entitled to a protected right to privacy. “[T]he right not to have intimate facts concerning one’s life disclosed without one’s consent ... is a venerable one whose constitutional significance we have recognized.... ” Bartnicki v. Vopper, 200 F.3d 109, 122 (3d Cir.1999), cert, granted, —— U.S. ——, 120 S.Ct. 2716, 147 L.Ed.2d 981 (2000).
First, in United States v. Westinghouse Electric Corp., 638 F.2d 570 (3d Cir.1980), we held that private medical information is “well within the ambit of materials entitled to privacy protection,” in part because it concerns intimate facts of a personal nature. Id. at 577. We cautioned, however, that the right is not absolute. Public health or like public concerns may justify access to information an individual may desire to remain confidential. In examining right to privacy claims, we, therefore, balance a possible and responsible government interest in disclosure against the individual’s privacy interests. Id.
In Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 110 (3d Cir.1987), we held that questions posed concerning medical, financial and behavioral information relating to whether police officer applicants were capable of working in stressful and dangerous positions did not unconstitutionally infringe on the applicant’s privacy rights, but determined that there were inadequate safeguards on unnecessary disclosure of the information obtained. We observed that “[i]t would be incompatible with the concept of privacy to permit protected information ... to be publicly disclosed.” Id. at 118. In performing the necessary balancing inquiry, we looked to the individual’s privacy expectation and concluded that “[t]he more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny.” Id. at 112-13.
Next, in Doe v. Southeastern Pennsylvania Transportation Authority, 72 F.3d 1133 (3d Cir.1995), a public employee brought a section 1983 action for violations of his right to privacy when the employer discovered, through records of drug purchases made through the employee health program, that the employee had AIDS. After weighing certain factors to determine whether the disclosure constituted an actionable invasion of privacy, we determined that the public employer’s need to access the prescription records for purposes of monitoring the health plan outweighed the employee’s interest in keeping his drug purchases confidential. Id. at 1143. We arrived at this conclusion, however, only after identifying the government’s interest in the information as “gen *196 uine, legitimate and compelling.” Id. at 1141.
Most recently, in Gruenke v. Seip, 225 F.3d 290 (3d Cir.2000), a high school swim team coach, suspecting that á teenage team member was pregnant, required the young woman to take a pregnancy test. The young woman and her mother filed a section 1983 action claiming inter alia that the pregnancy test unconstitutionally interfered with the daughter’s right to privacy regarding personal matters. We decided that the daughter’s claim “falls squarely within the contours of the recognized right of one to be free from disclosure of personal matters as outlined in Whalen v. Roe” and held that the fact that the coach compelled the student to take the test, coupled with an alleged failure to take appropriate steps tq keep the information confidential infringed the girl’s right to privacy. Id. at 303. Significant to today’s matter, we determined that this type of conduct was not objectively reasonable under the law and could not entitle the coach to immunity from suit. Id.
We thus carefully guard one’s right to privacy against unwarranted government intrusion. It is difficult to imagine a more private matter than one’s sexuality and a less likely probability that the government would have a legitimate interest in disclosure of sexual identity.[4]
We can, therefore, readily conclude that Wayman’s sexual orientation was an intimate aspect of his personality entitled to privacy protection under Whalen. The Supreme Court, despite the Bowers decision, and our court have clearly spoken that matters of personal intimacy are safeguarded against unwarranted disclosure.
The zone of privacy, while clearly established in matters of personal intimacy, is not absolute. If there is a government interest in disclosing or uncovering one’s sexuality that is “genuine, legitimate and compelling,” Doe v. SEPTA, 72 F.3d at 1141, then this legitimate interest can override the protections of the right to privacy. In this instance, however, no such government interest has been identified. Indeed, Wilinsky conceded he would have no reason to disclose this type of sensitive information.
Before we can definitely conclude that a constitutional tort has occurred, however, we must further ask whether Wilinsky’s threat of disclosure, rather than actual disclosure, constituted a violation of Wayman’s right to privacy.
Cases discussing actionability of threats to violate constitutional rights appear to follow one of two directions. Simply put, threats accompanied by a “chilling effect” that deny or hinder the exercise of a constitutional right have been deemed cognizable, see e.g., Citizens Action Fund v. City of Morgan City, 154 F.3d 211, 216 (5th Cir.1998), opinion withdrawn on denial of rehearing, 172 F.3d 923 (5th Cir.1999) (“[t]hreats of unconstitutionally enforcing laws against individuals can lead to a chilling effect upon speech, silencing voices and opinions which the First Amendment was meant to protect”); Lamar v. Steele, 693 F.2d 559, 562 (5th Cir.1982) (contested state action aimed at precluding plaintiffs participation in future *197 litigation implicated First Amendment’s protections of free speech and right to petition), while threats arising in constitutional contexts without a deterrent effect could not substantiate a section 1983 claim. See e.g. Schlessinger v. Salimes, 100 F.3d 519 (7th Cir.1996) (threat to arrest not cognizable); Balliet v. Whitmire, 626 F.Supp. 219 (M.D.Pa.1986), aff'd, 800 F.2d 1130 (3d Cir.1986) (threat to remove child from home not a constitutional violation).
A threat to disclose implicating privácy rights does not, to us, fit into either category. The threat of disclosure does not have a chilling effect since the right to privacy is pervasive, i.e., no particular action is deterred. Instead, the essence of the right to privacy is in “avoiding disclosure of personal matters,” Whalen, id. at 599, 97 S.Ct. 869. The threat to breach some confidential aspect of one’s life then is tantamount to a violation of the privacy right because the security of one’s privacy has been compromised by the threat of disclosure. Thus, Wilinsky’s threat to disclose Wayman’s suspected homosexuality suffices as a violation of Wayman’s constitutionally protected privacy interest.
III.
We next address whether Officers Wilin-sky and Hoban could reasonably believe that their conduct in regard to Wayman was lawful in light of the established law and the information in their possession. Hunter v. Bryant, 502 U.S. 224, 227, 112 S.Ct. 534, 116 L.Ed.2d 589 (1991).
A. Officer Hoban
Officer Hoban claims that he is entitled to qualified immunity because no evidence connected him to the questioning of Wayman, or any other action that would constitute a violation of Wayman’s constitutional rights.
An interlocutory appeal, however, does not he from a denial of qualified immunity when the claim is one of factual insufficiency. Behrens v. Pelletier, 516 U.S. 299, 313, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996). Stated another way—an “I didn’t do it” argument is not recognizable in this context. Reyes v. Sazan, 168 F.3d 158, 161 (5th Cir.1999).
Thus, we are without jurisdiction to discuss Hoban’s qualified immunity argument.[5]
B. Officer Wilinsky
Similarly, we' do' not discuss whether Wilinsky made the alleged statement'concerning the threatened disclosure of Wayman’s homosexuality to Wayman’s grandfather.[6] To reiterate, our jurisdiction to hear interlocutory qualified immunity appeals exists only to the extent that the denial turns on an issue of law. Johnson v. Jones, 515 U.S. 304, 313, 115 S.Ct. 2151, 132 L.Ed.2d 238 (1995). Where, however, the denial turns on the sufficiency of the evidence, an appeal will not he until the District Court enters final judgment in the case. In re Montgomery County, 215 F.3d 367 (3d Cir.2000). Thus, Wilinsky could not appeal the denial of qualified immunity on the grounds he did not make the statement. Otherwise, his appeal would suffer the same fate as Hoban’s “I didn’t do it” appeal.
We turn then to whether Wilinsky should have known that his conduct, as described by the plaintiff, violated clearly established law. As previously discussed, by Wilinsky’s own acknowledgment-, -disclosure of Wayman’s suspected homosexuality would be a matter of private concern. Wilinsky stated that because Wayman was 18, there was no reason for him to interfere with Wayman’s family’s awareness of his sexual orientation. In addition, Wilin-sky testified that he did not include suspi *198 cion of homosexual activity in his police report because of the confidential nature of the information. Obviously, then, Wilinsky was aware that one’s sexual orientation is intrinsically personal and no compelling reason to disclose such information was warranted. Because the confidential and private nature of the information was obvious, and because the right to privacy is well-settled, the concomitant constitutional violation was apparent notwithstanding the fact that the very action in question had not previously been held to be unlawful. See Gruenke v. Seip, 225 F.3d 290, 299 (3d Cir.2000), quoting Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Accordingly, Wilinsky could not reasonably have believed that his questioned conduct was lawful in light of the established law protecting privacy rights.[7]
IV.
For the reasons stated above, we will affirm the order of the District Court denying summary judgment on the grounds of qualified immunity.

. We exercise plenary review over a District Court’s order granting summary judgment on the basis of qualified immunity. The plaintiff, as the non-moving party, is entitled to every favorable inference that can be drawn from the record. Bartholomew v. Commonwealth of Pennsylvania, 221 F.3d 425 (3d Cir.2000); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir.1997).
Some facts are undisputed. Where discrepancies exist, we relate the plaintiff's version.

. The privacy right has been extended to activities relating to marriage, Loving v. Virgi-

. In Walls v. City of Petersburg, 895 F.2d 188 (4th Cir.1990), the Court of Appeals for the Fourth Circuit examined the law of privacy in the context of a police background questionnaire which asked if the applicant ever had same sex relations. The court of appeals relied on the Supreme Court's refusal to find in Bowers that the privacy right protected homosexual sodomy in deciding that the question was not repugnant to that right.
We part company with our sister court’s ruling because the court, without discussion, applied Bowers as controlling on the issue of forced disclosure of sexual orientation despite the fact that Bowers focused on whether a state could constitutionally prohibit certain consensual homosexual conduct. Neither Bowers nor Walls inform the issue before us.

. While we have not previously confronted whether forced disclosure of one’s sexual orientation would be protected by the right to privacy, we agree with other courts concluding that such information is intrinsically private. See Powell v. Schriver, 175 F.3d 107, 111 (2d Cir.1999) ("the excrutiatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate”); Bloch v. Ribar, 156 F.3d 673, 685 (6th Cir.1998) (publicly revealing information regarding sexuality and choices about sex exposes an aspect of our lives that we regard as personal and private); Eastwood v. Dept. of Corrections, 846 F.2d 627, 631 (10th Cir.1988) (right to privacy "is implicated when an individual is forced to disclose information regarding personal sexual matters”); Thorne v. City of El Segundo, 726 F.2d 459, 468 (9th Cir.1983) (the interest raised in the privacy of sexual activities is within the zone of privacy protected by the Constitution).

. Additionally, Hoban did not argue to the District Court that he is factually remote from the allegations of the complaint.

. The fact that Wilinsky so advised Wayman of his intent to disclose was conceded at oral argument.

. Wilinsky offers that, as a small town police officer, his role has parental overtones, thus, reducing the citizen's expectation of privacy when they encounter him in an official capac-lty. We mention this only to note our disagreement with the concept that the breadth of one’s constitutional rights can somehow be diminished by demographics.