STAPLETON, Circuit Judge,
dissenting:
I respectfully dissent.
In order for law to be “clearly established” for purposes of qualified immunity, there must be pre-existing authority which rules out the possibility that a reasonable official in the defendant’s position could have believed his conduct to be lawful. Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir.2000). “This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent.” See Gruenke v. Seip, 225 F.3d 290, 299 (3rd Cir.2000), quoting Anderson v. Creighton, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987). Here, prior to the events giving rise to this case, there was no Supreme Court case law addressing either the issue of whether there is a constitutionally protected right of privacy in one’s sexual orientation, or the issue of whether a mere threat to disclose constitutionally protected private information can constitute a constitutional tort. Of the decisions of the inferior courts, only one addressed the former issue, Walls v. City of Petersburg, 895 F.2d 188 (4th Cir.1990), and it held that there is no constitutionally protected privacy interest in one’s sexual orientation. With respect to the second issue, there was no case holding that an unexecuted threat to disclose private information can constitute a violation of the right to privacy, and the case law dealing with threats to violate other constitutional rights provided no affirmative support for the proposition that threats to violate a right of privacy were actionable. Thus, it cannot be said that the unlawfulness of Officer Wilinsky’s conduct was apparent at the time it occurred. It follows that he is entitled to qualified immunity.
Before elaborating on our differences, I note my agreement with much that the Court has today said. Though we have not addressed the issue before, I agree that, based on the precedents of this Court, Wayman did possess a privacy interest in his sexual orientation. Our previous decisions in Westinghouse and FOP have understood the right to privacy to encompass all “intimate facts of a personal nature.” See United States v. Westinghouse, 638 F.2d 570, 577 (3d Cir.1980); Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 112-13 (3d Cir. 1987). I think it fair to say that our society regards a person’s sexual orientation as intimate information of a personal nature and, accordingly, recognizes a rea *199 sonable and legitimate expectation of privacy in that information.[1]
The alleged action of Wilinsky primarily at issue here is his threat to disclose private information.[2] It is clear that while Officer Wilinsky threatened to disclose Wayman’s suspected sexual orientation, he did not in fact do so. Even so, I am in agreement with the Court that Wilinsky’s threat to disclose Wayman’s suspected sexual orientation violated the Constitution. I reach this conclusion, however, by a different route than the Court. I believe that a threat to disclose private information violates the constitutional right to privacy only where, as here, an officer with no legitimate interest in effecting disclosure makes a threat, the intended and foreseeable effect of which is involuntary self-disclosure.
Essentially a blackmail mechanism, Wi-linsky’s “tell now or I’ll tell later” threat had the foreseeable effect of forcing disclosure by Wayman without any further action on the part of Wilinsky. It would make little sense to condone an officer’s acts effecting disclosure simply because the victim is made the instrument of the disclosure. It makes more sense to examine the culpability of the conduct and ask whether an officer completed steps reasonably designed to effect disclosure with the intent that disclosure would result. In short, I believe Wilinsky’s threat itself was a violation of Wayman’s right to privacy because Wilinsky, acting as a state officer, knowingly engaged in conduct reasonably calculated to effect the involuntary disclosure of Wayman’s sexual orientation.
Thus, I agree with the Court’s decision that a constitutional violation occurred. I part ways with my colleagues, however, on whether the unconstitutionality of Wilin-sky’s conduct was clearly established by the pre-existing case law.
First, a person’s right to privacy in his or her sexual orientation simply was not clearly established in April of 1997. Only one opinion directly addressing the issue existed at the time of Wilinsky’s conduct, and that opinion held that no right to privacy exists in a person’s sexual orientation.[3] See Walls, 895 F.2d at 193 (rejecting, on the authority of Bowers v. Hard- *200 wick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), the proposition that a city employee’s right to privacy was violated by her being requiring to state whether she had “ever had sexual relations with a person of the same sex”). With the relevant ease law in this state, I am unable to conclude that no reasonable officer in Wi-linsky’s position could have believed his conduct to be consistent with the Constitution.
Second, I must differ with the Court when it finds that the right to privacy is generally infringed by threats to violate that right and then concludes that this rule is clearly established. Where, as with the rights of free exercise and free access to the courts, the exercise of a constitutional right requires a volitional act on the part of the holder of the right, courts have taken the realistic view that threats alone may impermissibly chill the exercise of the right and, accordingly, may give rise to liability. Outside the narrow confines of rights specifically protecting free exercise or access, however, courts have held that threats to violate constitutional rights are not generally actionable as constitutional violations. See, e.g. Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir.1991); Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir.1989); King v. Olmsted County, 117 F.3d 1065, 1067 (8th Cir.1997); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir.1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir.1979). The Court cites no case in which a threat to violate a right to privacy has been held to violate the Constitution, and I know of none. While, as I have indicated, I would be willing to hold that this particular threat did violate Wayman’s constitutional' right to privacy because it had the foreseeable consequence of effecting disclosure without further action on the part of Wilinsky, I must acknowledge that I have found no precedent anticipating the formation of such a rule. The state of the case law dealing with threats to violate the Constitution is thus an independent reason for sustaining Wilinsky’s qualified immunity.
I would remand to the District Court with instructions to dismiss the count of Sterling’s claim alleging a violation of the right to privacy.

. While I consider it a closer issue than my colleagues do, I also ultimately reject the analysis proffered in Walls v. City of Petersburg, 895 F.2d 188, 193 (1990). Unlike the Walls court, I do not read the Supreme Court’s opinion in Bowers as intended to affect cases arising under the disclosure prong of Whalen. See Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986); Whalen v. Roe, 429 U.S. 589, 97 S.Ct. 869, 51 L.Ed.2d 64(1977).

. The argument that the questioning violated Wayman’s constitutional right to privacy is unpersuasive. As the Court’s opinion notes, the two young men were found hiding in a parked jeep on the premises of a closed beer distributor in a high-crime area. They gave contradictory and evasive explanations for their presence. Officer Wilinsky apparently believed some criminal activity may have been afoot, and did not act unreasonably by questioning the young men to find out why they were there. As the Court observes, if there is a legitimate governmental interest in uncovering or disclosing a person’s sexual orientation, that interest overrides the protections of the right to privacy.

.I find unpersuasive the majority’s citation of several other cases in footnote four. Three of these cases' were decided after the events at . issue here took place. As the majority correctly notes, the applicable test looks to the time of the right's alleged violation. See Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999). I cannot conclude that our law was clearly established in 1997 based upon opinions issued after that date. Thorne, the sole remaining case, involved an inquiry into the explicit factual details of a job applicant’s sexual history and miscarriage, including the identities .of her past sexual partners. See Thorne v. City of El Segundo; 726 F.2d 459, 462 & n. 1 (9th Cir.1983). While Thome was decided in 1983, it cannot be viewed as having clearly established a privacy right- in a person's sexual orientation as of 1997. The Fourth Circuit’s decision in Walls addressed the issue squarely in 1990 and reached the opposite conclusion based primarily on Bowers, a Supreme Court precedent decided three years after Thome. Thus, the law in this area was, at best, unclear.