Allen L. LAMAR, Plaintiff-Appellee Cross-Appellant,

v.

L.A. STEELE, Defendant-Appellant Cross-Appellee.

No. 81–2045.

United States Court of Appeals, Fifth Circuit.

Dec. 14, 1982.

Rehearing and Rehearing En Banc Denied Feb. 28, 1983.

Ann Kraatz, Kenneth Peterson, Asst. Attys. Gen., Austin, Tex., for defendant-appellant cross-appellee.

Johnson, Swanson & Barbee, Dan S. Boyd, Dallas, Tex., for plaintiff-appellee cross-appellant.

Before GARZA, POLITZ and WILLIAMS, Circuit Judges.

POLITZ, Circuit Judge:

Allen L. Lamar, a prisoner in the Ellis Unit of the Texas Department of Corrections (TDC) from 1968 to 1979 [1] invoked 42 U.S.C. § 1983 in a suit against Len Arthur Steele, a building major at the Ellis Unit, claiming that Steele denied him access to the courts. A jury, functioning under the guidance of a federal magistrate, returned a verdict on special interrogatories. The trial court ultimately entered judgment in favor of Lamar for $1 in nominal damages, denied punitive damages and, after remand, awarded attorney's fees and costs.[2] Ellis appeals; Lamar cross-appeals. For reasons assigned, we affirm in part, reverse in part, and remand.

Lamar was active as a "writ writer," a person who assists fellow inmates in preparing petitions seeking various forms of judicial relief ranging from applications for habeas relief to suits for injunction and money judgments against state officials, employees, the state, and its agencies. Lamar also filed scores of class action suits challenging various prison practices and conditions.[3] Steele manifested a distaste for La-

---

1. In 1979, Lamar and the other TDC inmates who testified or were otherwise involved in *Ruiz v. Estelle,* 679 F.2d 1115 (5th Cir.1982), major litigation involving Texas prisons, were transferred to a federal prison.

2. The magistrate initially deferred the award of attorney's fees. After remand, Lamar recovered judgment against Steele for attorney's fees and litigation costs totaling $7,992.33.

3. These suits were usually unsuccessful. Notable exceptions included two suits focusing on

mar's activities. Lamar alleged and offered proof that Steele: (1) burned his legal documents, (2) asked one inmate to assault him, (3) asked another to kill him, (4) invited him to pick up and attempt to use a small knife while he (Steele) held a substantial hunting knife in his hand out of view, and (5) promised to send him home "in a pine box."

### Evidentiary Rulings

Steele claims that the magistrate erred in admitting: (1) Lamar's testimony that Lawrence Smith, a fellow inmate who was deceased at the time of trial, had told him that Steele had threatened to harm Lamar if he continued to file law suits, and (2) the testimony of Bertrand Bennett that Steele had given him a knife and asked him to kill a "writ writer" named Clyde Sewell. Steele objected to the first as hearsay and the second as inadmissible character evidence.

■ The hearsay objection is not well-taken. The Smith statement was offered as evidence that Smith had made the statement; it was offered to prove the fact of the assertion, not the truth of the assertion. As such it is not proscribed hearsay. The fact of the assertion is relevant to the question of threats, intimidation and harassment as they would relate to impeding access to the courts.

■ As to Bennett's testimony, we are guided by Rule 404(b), Federal Rules of Evidence. This rule permits introduction of what otherwise might be inadmissible character evidence when it is found to be relevant to the issue of plan or motive. To qualify under this exception, the conduct tendered must be sufficiently similar to the act under inquiry to minimize any doubt that the two are products of the same mind. McCormick, *Evidence* § 157 (1954). The more idiosyncratic the less doubt, and, concommitantly, the greater the probative value. 2 Weinstein *Evidence* § 404[16], p. 404–92. From this vantage we perceive a similarity unto a mirror image between the conduct of Steele, Bennett and "writ writer" Sewell and Steele's conduct with the prisoner Ronald Frank who was invited to kill "writ writer" Lamar. The plan criterion of Rule 404(b) is satisfied. *United States v. Maestas,* 546 F.2d 1177 (5th Cir. 1977). In addition, Steele's comments to Bennett bear relevance to the issue of notice. Steele's desire to purge the prison of writ writing furnished a reason for the acts of which Lamar complained. We find no abuse of discretion in the allowance of this evidence. *United States v. Benton,* 637 F.2d 1052 (5th Cir.1981).

### Interrogatories

■ In his cross-appeal, Lamar challenges the interrogatories[4] posed to the

racial discrimination in parole criteria and prison employment which resulted in judgments in favor of the prisoners.

4. SPECIAL INTERROGATORY NUMBER 1

Do you find from a preponderance of the evidence that during Allen L. Lamar's confinement in the Ellis Unit of the Texas Department of Corrections in 1975 or 1976 that Defendant L.A. Steele, while acting under color of law of the State of Texas, intentionally engaged in conduct calculated toward any of the following ends:

(1) To punish or retaliate against Allen L. Lamar for participating in lawsuits against officials of the Texas Department of Corrections?

(2) To threaten punishment or retaliation against Plaintiff Allen L. Lamar for participating in lawsuits against officials of the Texas Department of Corrections?
OR

(3) To discourage Allen L. Lamar from participating in lawsuits against officials of the Texas Department of Corrections?
ANSWER: "We do" or "We do not" _____
SPECIAL INTERROGATORY NUMBER 2

Do you find from a preponderance of the evidence that during Plaintiff Allen L. Lamar's confinement in the Ellis Unit of the Texas Department of Corrections Defendant L.A. Steele unnecessarily and wantonly inflicted emotional distress on the Plaintiff Allen L. Lamar?
ANSWER: "We do" or "We do not" _____
If you have answered "We do" to Special Interrogatories Numbers 1 and 2, then answer Special Interrogatory Number 3.
SPECIAL INTERROGATORY NUMBER 3

Do you find from a preponderance of the evidence that, in connection with the occurrences made the basis of this lawsuit, Defendant L.A. Steele acted in good faith?

jury. He maintains that the language used was confusing and incorrectly reflected controlling law. We agree. The interrogatories submitted by the magistrate permitted the jury's consideration of damages only if it found that the defendant acted both intentionally and wantonly. Since neither mental state is required to establish a violation of the right of judicial access, these interrogatories imposed on Lamar an inappropriate burden. *Navarette v. Enomoto,* 536 F.2d 277 (9th Cir.1976), *McCray v. Maryland,* 456 F.2d 1 (4th Cir.1972). The right of access may be tortiously impinged by threats, in turn triggered by efforts at court access. *Campbell v. Beto,* 460 F.2d 765 (5th Cir.1972). The mental processes of the state actor is immaterial to this analysis.

■ The prisoner's reaction to the threats is likewise immaterial. It is not necessary to show that the prisoner succumbed to the threats as a predicate for securing § 1983 relief. *Hudspeth v. Figgins,* 584 F.2d 1345 (4th Cir.1978). The contrary rule would result in the anomaly of protecting only those individuals who remain out of court.

We reject the suggestion that Steele's conduct was only that of a zealous prison official and merely reflected an innocuous attempt at guiding future activities of the prisoners. To the contrary, Steele's actions constituted punishment for Lamar's past activities and intimidation aimed at his future activities, all of which implicated the

first amendment's protections of free speech and right of petition. The conduct laid at Steele's door was a flagrant disregard of these constitutional rights. Occurrences after these threats were made were of no moment. *Hooks v. Kelley,* 463 F.2d 1210 (5th Cir.1972).

As reflected in their answer to the first Interrogatory, the jurors found that Steele intentionally engaged in conduct calculated either to punish, to threaten to punish Lamar for his involvement in past lawsuits, or to discourage his participation in future litigation. This is a finding of an actionable deprivation of the protected right of access. This issue is thus foreclosed. The liability of Steele is affirmed.

### Damages

The jury did not assess damages; the instructions restrained consideration of that issue unless the jurors found Steele's conduct intentional and that he "unnecessarily and wantonly inflicted emotional distress on ... Lamar." In post-verdict motions, the magistrate awarded $1 as nominal damages for the constitutional deprivation. A jury should first address the issue of damages, acting pursuant to proper instructions.

■ In *Carey v. Piphus,* 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), the Supreme Court held that in some due process cases § 1983 plaintiffs must prove actual damages. It remains for the trial court to determine the effect of this teaching on

ANSWER: "We do" or "We do not" _____
You are instructed that Defendant L.A. Steele did not act in "good faith" if he reasonably should have known that his actions would violate the rights of Plaintiff Allen L. Lamar.
SPECIAL INTERROGATORY NUMBER 4
If you have answered Special Interrogatories Numbers 1 and 2 "We do," then and only then, answer Special Interrogatory Number 4.
What sum of money, if any, do you find from a preponderance of the evidence would fairly and reasonably compensate Allen L. Lamar for the injury, deprivation of rights, or infliction of emotional distress which you find from a preponderance of the evidence resulted from the conduct of Defendant L.A. Steele?
ANSWER: $ _____
If you have answered Special Interrogatories Numbers 1, 2, "We do," then and only then, answer Special Interrogatory Number 5.

SPECIAL INTERROGATORY NUMBER 5
Do you find from the preponderance of the evidence that the conduct of Defendant L.A. Steele against Plaintiff Allen L. Lamar was either (1) malicious or (2) willful?
ANSWER: "We do" or "We do not" _____
If you have answered Special Interrogatories Numbers 1, 2 and 5 "We do," and only in that event, answer Special Interrogatory Number 6.
SPECIAL INTERROGATORY NUMBER 6
What amount of money, if paid now in dollars and cents, do you find from a preponderance of the evidence should be awarded against Defendant L.A. Steele as punitive damages?
ANSWER: $ _____
You are instructed that an award of exemplary damages is made in order to deter the Defendant and others from engaging in similar conduct in the future.

Lamar's claim. In this regard we note that the failure of proof of compensatory damages does not necessarily preclude an award of punitive damages and attorney's fees. *Carlson v. Green*, 446 U.S. 14, 100 S.Ct. 1468, 64 L.Ed.2d 15 (1980); *Basiardanes v. City of Galveston*, 682 F.2d 1203 (5th Cir. 1982). The award of attorney's fees, for services rendered prior to the notices of appeal, is affirmed. In due course the trial court is to award an appropriate amount of attorney's fees for this appeal and for the proceedings on remand. The judgment awarding only nominal compensatory damages and denying punitive damages is reversed and remanded for reconsideration.

### Attorney's Fees

The magistrate correctly declined to assess attorney's fees against the Texas Department of Corrections. The instant suit is brought against Steele individually, and is payable by Steele, individually. The state is not a party, and the state's treasury is not vulnerable to an attorney's fee award in an instance as is here presented.

The judgment of the trial court, insofar as it relates to Steele's liability and the award of attorney's fees, is AFFIRMED. The judgment as it relates to damages is REVERSED and REMANDED for further proceedings consistent herewith.