232 F.3d 190 (3rd Cir. 2000)
 MADONNA STERLING, EXECUTRIX OF THE ESTATE OF MARCUS ANTHONY WAYMAN
V.
BOROUGH OF MINERSVILLE; F. SCOTT WILINSKY, POLICE OFFICER; THOMAS HOBAN, POLICE OFFICER; JOSEPH WILINSKY, POLICE CHIEF, INDIVIDUALLY AND AS POLICE OFFICERS FOR THE BOROUGH OF MINERSVILLE
OFFICER F. SCOTT WILINSKY AND OFFICER THOMAS HOBAN, APPELLANTS
 No. 99-1768
 UNITED STATES COURT OF APPEALS FOR THE THIRD CIRCUIT
 Argued July 18, 2000
Filed November 6, 2000
Amended November 14, 2000
 
 Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civ. No. 98-cv-01857) District Judge: Honorable Arnold C. Rapoport[Copyrighted Material Omitted]
 David Rudovsky, Esquire (Argued) Kairys, Rudovsky, Epstein, Messing & Rau 924 Cherry Street 5th Floor Philadelphia, PA 19107 Counsel for Appellee
 L. Rostaing Tharaud, Esquire (Argued) Marshall, Dennehey, Warner, Coleman & Goggin 1845 Walnut Street Philadelphia, PA 19103 Counsel for Appellants
 Catherine Hanssens, Esq. Lambda Legal Defense & Education Fund 120 Wall Street Suite 1500 New York, NY 10005 Counsel for Amicus-Appellee
 Before: Mansmann, Rendell and Stapleton, Circuit Judges.
 OPINION OF THE COURT
 Mansmann, Circuit Judge.
 
 
 1
 This interlocutory appeal arises from a denial of the defendants' motion for summary judgment on qualified immunity grounds.[1] At issue is whether police officers' threat to disclose the suspected sexual orientation of an arrestee to his family member violated the young man's constitutional right to privacy. We will affirm the order of the District Court because the law is clearly established that matters of personal intimacy are protected from threats of disclosure by the right to privacy and at least one of the officers involved was aware that his conduct was knowingly violative of that right.
 
 I.
 
 2
 On April 17, 1997, 18-year old Marcus Wayman and a 17-year old male friend were parked in a lot adjacent to a beer distributor. The car and its occupants were observed by the defendant police officer, F. Scott Wilinsky. Wilinsky was concerned about previous burglaries of the beer distributor and was suspicious of the fact that the headlights on the car were out. Wilinsky called for back-up and, shortly thereafter, Officer Thomas Hoban, the second defendant, arrived at the scene.
 
 
 3
 The officers' investigation did not show any sign of a break-in at the business, but it was apparent to the officers that the young men had been drinking alcohol. The boys were also evasive when asked what they were doing in the parking lot. When an eventual search uncovered two condoms, Wilinsky questioned whether the boys were in the parking lot for a sexual assignation. Wilinsky testified that both Wayman and his companion eventually acknowledged that they were homosexuals and were in the parking lot to engage in consensual sex, but we note that the 17-year old denied making such admissions.
 
 
 4
 The two boys were arrested for underage drinking and were taken to the Minersville police station. At the station, Wilinsky lectured them that the Bible counseled against homosexual activity. Wilinsky then warned Wayman that if Wayman did not inform his grandfather about his homosexuality that Wilinsky would take it upon himself to disclose this information. After hearing this statement, Wayman confided to his friend that he was going to kill himself. Upon his release from custody, Wayman committed suicide in his home.
 
 
 5
 Wayman's mother, Madonna Sterling, as executrix of her son's estate, filed suit under 42 U.S.C. S 1983 against the Borough of Minersville, Wilinsky and Hoban, as individuals and in their capacity as police officers, and the Chief of Police of Minersville. The complaint alleged that the officers and the borough violated Wayman's Fourth Amendment right against illegal arrest, his Fourteenth Amendment rights to privacy and equal protection and the laws and the Constitution of the Commonwealth of Pennsylvania.
 
 
 6
 Following discovery, the defendants filed a motion for summary judgment. The District Court denied summary judgment on the right to privacy, state law and municipal liability claims, but granted the motion with respect to the Fourth Amendment claim that the arrest of Wayman was without probable cause. The court further ruled that the officers were not entitled to qualified immunity since their conduct violated Wayman's clearly established right to privacy as protected by the Constitution.
 
 
 7
 Officers Hoban and Wilinsky filed notices of appeal consistent with our authority to hear interlocutory appeals on the issue of qualified immunity. Mitchell v. Forsyth, 472 U.S. 511 (1985). It is this issue alone which draws our attention at this time.
 
 II.
 
 8
 We have previously set forth the analytical framework for deciding qualified immunity claims. First, we must determine if the plaintiff has alleged a deprivation of a clearly established constitutional right. Assaf v. Fields, 178 F.3d 170, 174 (3d Cir. 1999). A right is clearly established if its outlines are sufficiently clear that a reasonable officer would understand that his actions violate the right. Kornegay v. Cottingham, 120 F.3d 392, 396 (3d Cir. 1997). If a violation exists, the immunity question focuses on whether the law is established to the extent that "the unlawfulness of the action would have been apparent to a reasonable official." Assaf, 178 F .3d at 174. The status of the right as clearly established and the reasonableness of the official conduct are questions of law. Sharrar, 128 F.3d at 826, 828.
 
 
 9
 We first ask whether Wayman had a protected privacy right concerning Wilinsky's threat to disclose his suspected sexual orientation. If the right exists, we then query whether it was clearly established at the time of its alleged violation.
 
 
 10
 In Griswold v. Connecticut, 381 U.S. 479 (1965), the Supreme Court first acknowledged the individual's constitutional right to privacy. In Griswold, the Court declared that a state law prohibiting use of contraceptives by married couples was unconstitutional because it violated the right to privacy as gleaned from the penumbra of rights established by the Bill of Rights. Id. at 485-86. The Griswold decision validated a dissent written forty years earlier by Justice Brandeis in Olmsted v. United States, 277 U.S. 438, 478 (1928), which described the privacy right as "the right to be let alone -- the most comprehensive of rights and the right most valued by civilized men. To protect that right, every unjustifiable intrusion of the government upon the privacy of an individual .. . must be deemed a [constitutional] violation." Id. at 478 (Brandeis, J., dissenting).
 
 
 11
 The boundaries of the right to privacy, however, have not been clearly delineated.[2] In Griswold, the majority placed heavy emphasis on the intimate relationship of husband and wife in deciding that personal decisions relating to marriage are free from unjustified government interference. Later, however, the Court recognized that the right of privacy inured to the individual beyond the marital state. In Eisenstadt v. Baird, 405 U.S. 438 (1972), the Court invalidated a Massachusetts law that made it a felony to give anyone other than a married person contraceptive medicines or devices. The Eisenstadt majority held that the right to privacy is not limited to certain relationships:
 
 
 12
 If under Griswold the distribution of contraceptives to married persons cannot be prohibited, a ban on distribution to unmarried persons would be equally impermissible. It is true that in Griswold the right of privacy in question inhered in the marital relationship. Yet the marital couple is not an independent entity with a mind and heart of its own, but an association of two individuals each with separate intellectual and emotional makeup. If the right of privacy means anything, it is the right of the individual, married or single, to be free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child.
 
 
 13
 Id. at 453 (citations omitted).
 
 
 14
 A year later in Roe v. Wade, 410 U.S. 113 (1973), the Court observed that there is "a right of personal privacy, or a guarantee of certain areas or zones of privacy," protected by the Constitution. Id. at 152. This guarantee of personal privacy, covers "only personal rights that can be deemed `fundamental' or `implicit in the concept of ordered liberty.' " Id. (quoting Palko v. Connecticut, 302 U.S. 319, 325 (1937)).
 
 
 15
 The constitutional right to privacy was further refined in Whalen v. Roe, 429 U.S. 589 (1977). In Whalen, the constitutionality of a New York statute which required that the state be provided with a copy of prescriptions for certain drugs was challenged by physicians and patients. While the statute's validity was ultimately upheld, the Court held that the constitutional right to privacy respects not only an individual's autonomy in intimate matters, but also an individual's interest in avoiding divulgence of highly personal information. Id. at 599-600. This sentiment was reaffirmed in Nixon v. Administrator of General Services, 433 U.S. 425 (1977), wherein the Court, quoting Whalen, 429 U.S. at 599, acknowledged that "[o]ne element of privacy has been characterized as the individual interest in avoiding disclosure of personal matters..." Nixon, 433 U.S. at 457.
 
 
 16
 We recognize that the Supreme Court has not definitively extended the right to privacy to the confidentiality of one's sexual orientation. Indeed, a later case gives us pause. In Bowers v. Hardwick, 478 U.S. 186 (1986), the Supreme Court overturned a decision of the Court of Appeals of the Eleventh Circuit that had invalidated a Georgia statute that made consensual homosexual sodomy a criminal offense. The majority rejected the claim that the Constitution confers a "fundamental right to homosexuals to engage in consensual sodomy." Id. at 192.
 
 
 17
 While Bowers indicates that the Court is resistant to bestowing the protection of the Constitution on some sexual behavior, its ruling focused on the practice of homosexual sodomy and is not determinative of whether the right to privacy protects an individual from being forced to disclose his sexual orientation. In other words, the decision did not purport to punish homosexual status. Such a determination would in fact be contrary to the Court's holding in Robinson v. California, 370 U.S. 660 (1962), that the Eighth and Fourteenth Amendments forbid punishment of status as opposed to conduct. Id. at 667. We do not read Bowers as placing a limit on privacy protection for the intensely personal decision of sexual preference.[3]
 
 
 18
 Our jurisprudence takes an encompassing view of information entitled to a protected right to privacy. "[T]he right not to have intimate facts concerning one's life disclosed without one's consent . . . is a venerable one whose constitutional significance we have recognized..." Bartnicki v. Vopper, 200 F.3d 109, 122 (3d Cir . 1999), cert. granted, 120 S. Ct. 2716 (2000).
 
 
 19
 First, in United States v. Westinghouse Electric Corp., 638 F.2d 570 (3d Cir. 1980), we held that private medical information is "well within the ambit of materials entitled to privacy protection," in part because it concerns intimate facts of a personal nature. Id. at 577. We cautioned, however, that the right is not absolute. Public health or like public concerns may justify access to information an individual may desire to remain confidential. In examining right to privacy claims, we, therefore, balance a possible and responsible government interest in disclosure against the individual's privacy interests. Id.
 
 
 20
 In Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 110 (3d Cir. 1987), we held that questions posed concerning medical, financial and behavioral information relating to whether police officer applicants were capable of working in stressful and dangerous positions did not unconstitutionally infringe on the applicant's privacy rights, but determined that there were inadequate safeguards on unnecessary disclosure of the information obtained. We observed that "[i]t would be incompatible with the concept of privacy to permit protected information . . . to be publicly disclosed." Id. at 118. In performing the necessary balancing inquiry, we looked to the individual's privacy expectation and concluded that "[t]he more intimate or personal the information, the more justified is the expectation that it will not be subject to public scrutiny." Id. at 112-13.
 
 
 21
 Next, in Doe v. Southeastern Pennsylvania Transportation Authority, 72 F.3d 1133 (3d Cir. 1995), a public employee brought a section 1983 action for violations of his right to privacy when the employer discovered, through records of drug purchases made through the employee health program, that the employee had AIDS. After weighing certain factors to determine whether the disclosure constituted an actionable invasion of privacy, we determined that the public employer's need to access the prescription records for purposes of monitoring the health plan outweighed the employee's interest in keeping his drug purchases confidential. Id. at 1143. We arrived at this conclusion, however, only after identifying the government's interest in the information as "genuine, legitimate and compelling." Id. at 1141.
 
 
 22
 Most recently, in Gruenke v. Seip, 225 F.3d 290 (3d Cir. 2000), a high school swim team coach, suspecting that a teenage team member was pregnant, required the young woman to take a pregnancy test. The young woman and her mother filed a section 1983 action claiming inter alia that the pregnancy test unconstitutionally interfered with the daughter's right to privacy regarding personal matters. We decided that the daughter's claim "falls squarely within the contours of the recognized right of one to be free from disclosure of personal matters" as outlined in Whalen v. Roe and held that the fact that the coach compelled the student to take the test, coupled with an alleged failure to take appropriate steps to keep the information confidential, infringed the girl's right to privacy. Id. at 303. Significant to today's matter, we determined that this type of conduct was not objectively reasonable under the law and could not entitle the coach to immunity from suit. Id.
 
 
 23
 We thus carefully guard one's right to privacy against unwarranted government intrusion. It is difficult to imagine a more private matter than one's sexuality and a less likely probability that the government would have a legitimate interest in disclosure of sexual identity.[4]
 
 
 24
 We can, therefore, readily conclude that Wayman's sexual orientation was an intimate aspect of his personality entitled to privacy protection under Whalen. The Supreme Court, despite the Bowers decision, and our court have clearly spoken that matters of personal intimacy are safeguarded against unwarranted disclosure. The zone of privacy, while clearly established in matters of personal intimacy, is not absolute. If there is a government interest in disclosing or uncovering one's sexuality that is "genuine, legitimate and compelling," Doe v. SEPTA, 72 F.3d at 1141, then this legitimate interest can override the protections of the right to privacy. In this instance, however, no such government interest has been identified. Indeed, Wilinsky conceded he would have no reason to disclose this type of sensitive information.
 
 
 25
 Before we can definitely conclude that a constitutional tort has occurred, however, we must further ask whether Wilinsky's threat of disclosure, rather than actual disclosure, constituted a violation of Wayman's right to privacy.
 
 
 26
 Cases discussing actionability of threats to violate constitutional rights appear to follow one of two directions. Simply put, threats accompanied by a "chilling effect" that deny or hinder the exercise of a constitutional right have been deemed cognizable, see e.g., Citizens Action Fund v. City of Morgan, 154 F.3d 211, 216 (5th Cir. 1998), opinion withdrawn on denial of rehearing, 172 F.3d 923 (5th Cir. 1999) ("[t]hreats of unconstitutionally enforcing laws against individuals can lead to a chilling effect upon speech, silencing voices and opinions which the First Amendment was meant to protect"); Lamar v. Steele, 693 F.2d 559, 562 (5th Cir. 1982) (contested state action aimed at precluding plaintiff 's participation in future litigation implicated First Amendment's protections of free speech and right to petition), while threats arising in constitutional contexts without a deterrent effect could not substantiate a section 1983 claim. See e.g. Schlessinger v. Salimes, 100 F.3d 519 (7th Cir. 1996) (threat to arrest not cognizable); Balliet v. Whitmere, 626 F. Supp. 219 (M.D. Pa. 1986), aff'd, 800 F.2d 1130 (3d Cir. 1986) (threat to remove child from home not a constitutional violation).
 
 
 27
 A threat to disclose implicating privacy rights does not, to us, fit into either category. The threat of disclosure does not have a chilling effect since the right to privacy is pervasive, i.e., no particular action is deterred. Instead, the essence of the right to privacy is in "avoiding disclosure of personal matters," Whalen, id. at 599. The threat to breach some confidential aspect of one's life then is tantamount to a violation of the privacy right because the security of one's privacy has been compromised by the threat of disclosure. Thus, Wilinsky's threat to disclose Wayman's suspected homosexuality suffices as a violation of Wayman's constitutionally protected privacy interest.
 
 III.
 
 28
 We next address whether Officers Wilinsky and Hoban could reasonably believe that their conduct in regard to Wayman was lawful in light of the established law and the information in their possession. Hunter v. Bryant, 502 U.S. 224, 227 (1991).
 
 A. Officer Hoban
 
 29
 Officer Hoban claims that he is entitled to qualified immunity because no evidence connected him to the questioning of Wayman, or any other action that would constitute a violation of Wayman's constitutional rights.
 
 
 30
 An interlocutory appeal, however, does not lie from a denial of qualified immunity when the claim is one of factual insufficiency. Behrens v. Pelletier, 516 U.S. 299, 313 (1996). Stated another way -- an "I didn't do it" argument is not recognizable in this context. Reyes v. Sazan, 168 F.3d 158, 161 (5th Cir. 1999).
 
 
 31
 Thus, we are without jurisdiction to discuss Hoban's qualified immunity argument.[5]
 
 B. Officer Wilinsky
 
 32
 Similarly, we do not discuss whether Wilinsky made the alleged statement concerning the threatened disclosure of Wayman's homosexuality to Wayman's grandfather.[6] To reiterate, our jurisdiction to hear interlocutory qualified immunity appeals exists only to the extent that the denial turns on an issue of law. Johnson v. Jones, 515 U.S. 304, 313 (1995). Where, however, the denial turns on the sufficiency of the evidence, an appeal will not lie until the District Court enters final judgment in the case. In re Montgomery County, 215 F.3d 367 (3d Cir . 2000). Thus, Wilinsky could not appeal the denial of qualified immunity on the grounds he did not make the statement. Otherwise, his appeal would suffer the same fate as Hoban's "I didn't do it" appeal.
 
 
 33
 We turn then to whether Wilinsky should have known that his conduct, as described by the plaintiff, violated clearly established law. As previously discussed, by Wilinsky's own acknowledgment, disclosure of Wayman's suspected homosexuality would be a matter of private concern. Wilinsky stated that because Wayman was 18, there was no reason for him to interfere with Wayman's family's awareness of his sexual orientation. In addition, Wilinsky testified that he did not include suspicion of homosexual activity in his police report because of the confidential nature of the information. Obviously, then, Wilinsky was aware that one's sexual orientation is intrinsically personal and no compelling reason to disclose such information was warranted. Because the confidential and private nature of the information was obvious, and because the right to privacy is well-settled, the concomitant constitutional violation was apparent notwithstanding the fact that the very action in question had not previously been held to be unlawful. See Gruenke v. Seip, 225 F.3d 290, 299 (3d Cir. 2000), quoting Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). Accordingly, Wilinsky could not reasonably have believed that his questioned conduct was lawful in light of the established law protecting privacy rights.[7]
 
 IV.
 
 34
 For the reasons stated above, we will affirm the order of the District Court denying summary judgment on the grounds of qualified immunity.
 
 
 
 Notes:
 
 
 [1]
 We exercise plenary review over a District Court's order granting summary judgment on the basis of qualified immunity. The plaintiff, as the non-moving party, is entitled to every favorable inference that can be drawn from the record. Bartholomew v. Commonwealth of Pennsylvania, No. 99-1755, 221 F.3d 425 (3d Cir. Aug. 7, 2000); Sharrar v. Felsing, 128 F.3d 810, 817 (3d Cir. 1997).
 Some facts are undisputed. Where discrepancies exist, we relate the plaintiff's version.
 
 
 [2]
 The privacy right has been extended to activities relating to marriage, Loving v. Virginia, 388 U.S. 1, 12 (1967); procreation, Skinner v. Oklahoma, 316 U.S. 535, 541-42 (1942); contraception, Eisenstadt, 405 U.S. 438, 453 (1972); family relationships, Prince v. Massachusetts, 321 U.S. 158, 166 (1944); child rearing and education, Pierce v. Society of Sisters, 268 U.S. 510 (1925).
 
 
 [3]
 In Walls v. City of Petersburg, 895 F.2d 188 (4th Cir. 1990), the Court of Appeals for the Fourth Circuit examined the law of privacy in the context of a police background questionnaire which asked if the applicant ever had same sex relations. The court of appeals relied on the Supreme Court's refusal to find in Bowers that the privacy right protected homosexual sodomy in deciding that the question was not repugnant to that right.
 We part company with our sister court's ruling because the court, without discussion, applied Bowers as controlling on the issue of forced disclosure of sexual orientation despite the fact that Bowers focused on whether a state could constitutionally prohibit certain consensual homosexual conduct. Neither Bowers nor Walls inform the issue before us.
 
 
 [4]
 While we have not previously confronted whether forced disclosure of one's sexual orientation would be protected by the right to privacy, we agree with other courts concluding that such information is intrinsically private. See Powell v. Scrivner, 175 F .3d 107, 111 (2d Cir. 1999) ("the excruciatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter , is really beyond debate"); Bloch v. Ribar, 156 F.3d 673, 685 (6th Cir. 1998) (publicly revealing information regarding sexuality and choices about sex exposes an aspect of our lives that we regard as personal and private); Eastwood v. Dept. of Corrections, 846 F.2d 627, 631 (10th Cir. 1998) (right to privacy "is implicated when an individual is forced to disclose information regarding personal sexual matters"); Thorne v. City of El Segundo, 726 F.2d 459, 468 (9th Cir. 1980) (the interest raised in the privacy of sexual activities is within the zone of privacy protected by the Constitution).
 
 
 [5]
 Additionally, Hoban did not argue to the District Court that he is factually remote from the allegations of the complaint.
 
 
 [6]
 The fact that Wilinsky so advised Wayman of his intent to disclose was conceded at oral argument.
 
 
 [7]
 Wilinsky offers that, as a small town police officer, his role has parental overtones, thus, reducing the citizen's expectation of privacy when they encounter him in an official capacity. We mention this only to note our disagreement with the concept that the breadth of one's constitutional rights can somehow be diminished by demographics.
 
 
 STAPLETON, Circuit Judge, dissenting:
 
 35
 I respectfully dissent.
 
 
 36
 In order for law to be "clearly established" for purposes of qualified immunity, there must be pre-existing authority which rules out the possibility that a reasonable official in the defendant's position could have believed his conduct to be lawful. Paff v. Kaltenbach, 204 F.3d 425, 436 (3d Cir. 2000). "This is not to say that an official action is protected by qualified immunity unless the very action in question has been previously held unlawful, but it is to say that in light of pre-existing law the unlawfulness must be apparent." See Gruenke v. Seip, 225 F.3d 290, 299 (3rd Cir. 2000), quoting Anderson v. Creighton, 483 U.S. 635, 639-40 (1987). Here, prior to the events giving rise to this case, there was no Supreme Court case law addressing either the issue of whether there is a constitutionally protected right of privacy in one's sexual orientation, or the issue of whether a mere threat to disclose constitutionally protected private information can constitute a constitutional tort. Of the decisions of the inferior courts, only one addressed the former issue, Walls v. City of Petersburg, 895 F.2d 188 (4th Cir. 1990), and it held that there is no constitutionally protected privacy interest in one's sexual orientation. With respect to the second issue, there was no case holding that an unexecuted threat to disclose private information can constitute a violation of the right to privacy, and the case law dealing with threats to violate other constitutional rights provided no affirmative support for the proposition that threats to violate a right of privacy were actionable. Thus, it cannot be said that the unlawfulness of Officer Wilinsky's conduct was apparent at the time it occurred. It follows that he is entitled to qualified immunity.
 
 
 37
 Before elaborating on our differences, I note my agreement with much that the Court has today said. Though we have not addressed the issue before, I agree that, based on the precedents of this Court, Wayman did possess a privacy interest in his sexual orientation. Our previous decisions in Westinghouse and FOP have understood the right to privacy to encompass all "intimate facts of a personal nature." See United States v. Westinghouse, 638 F.3d 570, 577 (3d Cir. 1980); Fraternal Order of Police v. City of Philadelphia, 812 F.2d 105, 112-13 (3d Cir. 1987). I think it fair to say that our society regards a person's sexual orientation as intimate information of a personal nature and, accordingly, recognizes a reasonable and legitimate expectation of privacy in that information.[1]
 
 
 38
 The alleged action of Wilinsky primarily at issue here is his threat to disclose private information.[2] It is clear that while Officer Wilinsky threatened to disclose Wayman's suspected sexual orientation, he did not in fact do so. Even so, I am in agreement with the Court that Wilinsky's threat to disclose Wayman's suspected sexual orientation violated the Constitution. I reach this conclusion, however, by a different route than the Court. I believe that a threat to disclose private information violates the constitutional right to privacy only where, as here, an officer with no legitimate interest in effecting disclosure makes a threat, the intended and foreseeable effect of which is involuntary self-disclosure.
 
 
 39
 Essentially a blackmail mechanism, Wilinsky's" tell now or I'll tell later" threat had the foreseeable effect of forcing disclosure by Wayman without any further action on the part of Wilinsky. It would make little sense to condone an officer's acts effecting disclosure simply because the victim is made the instrument of the disclosure. It makes more sense to examine the culpability of the conduct and ask whether an officer completed steps reasonably designed to effect disclosure with the intent that disclosure would result. In short, I believe Wilinsky's threat itself was a violation of Wayman's right to privacy because Wilinsky, acting as a state officer, knowingly engaged in conduct reasonably calculated to effect the involuntary disclosure of Wayman's sexual orientation.
 
 
 40
 Thus, I agree with the Court's decision that a constitutional violation occurred. I part ways with my colleagues, however, on whether the unconstitutionality of Wilinsky's conduct was clearly established by the pre-existing case law.
 
 
 41
 First, a person's right to privacy in his or her sexual orientation simply was not clearly established in April of 1997. Only one opinion directly addressing the issue existed at the time of Wilinsky's conduct, and that opinion held that no right to privacy exists in a person's sexual orientation.[3] See Walls, 895 F.2d at 193 (rejecting, on the authority of Bowers v. Hardwick, 478 U.S. 186 (1986), the proposition that a city employee's right to privacy was violated by her being requiring to state whether she had "ever had sexual relations with a person of the same sex"). With the relevant case law in this state, I am unable to conclude that no reasonable officer in Wilinsky's position could have believed his conduct to be consistent with the Constitution.
 
 
 42
 Second, I must differ with the Court when it finds that the right to privacy is generally infringed by threats to violate that right and then concludes that this rule is clearly established. Where, as with the rights of free exercise and free access to the courts, the exercise of a constitutional right requires a volitional act on the part of the holder of the right, courts have taken the realistic view that threats alone may impermissibly chill the exercise of the right and, accordingly, may give rise to liability. Outside the narrow confines of rights specifically protecting free exercise or access, however, courts have held that threats to violate constitutional rights are not generally actionable as constitutional violations. See, e.g. Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991); Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989); King v. Olmstead County, 117 F.3d 1065, 1067 (8th Cir. 1997); Gaut v. Sunn, 810 F.2d 923, 925 (9th Cir. 1987); Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). The Court cites no case in which a threat to violate a right to privacy has been held to violate the Constitution, and I know of none. While, as I have indicated, I would be willing to hold that this particular threat did violate Wayman's constitutional right to privacy because it had the foreseeable consequence of effecting disclosure without further action on the part of Wilinsky, I must acknowledge that I have found no precedent anticipating the formation of such a rule. The state of the case law dealing with threats to violate the Constitution is thus an independent reason for sustaining Wilinsky's qualified immunity.
 
 
 43
 I would remand to the District Court with instructions to dismiss the count of Sterling's claim alleging a violation of the right to privacy.
 
 
 
 Notes:
 
 
 [1]
 While I consider it a closer issue than my colleagues do, I also ultimately reject the analysis proffered in Walls v. City of Petersburg, 895 F.2d 188, 193 (1990). Unlike the Walls court, I do not read the Supreme Court's opinion in Bowers as intended to affect cases arising under the disclosure prong of Whalen. See Bowers v. Hardwick, 478 U.S. 186 (1986); Whalen v. Roe, 429 U.S. 589 (1977).
 
 
 [2]
 The argument that the questioning violated Wayman's constitutional right to privacy is unpersuasive. As the Court's opinion notes, the two young men were found hiding in a parked jeep on the premises of a closed beer distributor in a high-crime area. They gave contradictory and evasive explanations for their presence. Officer Wilinsky apparently believed some criminal activity may have been afoot, and did not act unreasonably by questioning the young men to find out why they were there. As the Court observes, if there is a legitimate governmental interest in uncovering or disclosing a person's sexual orientation, that interest overrides the protections of the right to privacy.
 
 
 [3]
 I find unpersuasive the majority's citation of several other cases in footnote four. Three of these cases were decided after the events at issue here took place. As the majority correctly notes, the applicable test looks to the time of the right's alleged violation. See Conn v. Gabbert, 526 U.S. 286, 290 (1999). I cannot conclude that our law was clearly established in 1997 based upon opinions issued after that date. Thorne, the sole remaining case, involved an inquiry into the explicit factual details of a job applicant's sexual history and miscarriage, including the identities of her past sexual partners. See Thorne v. City of El Segundo, 726 F.2d 459, 462 & n.1 (9th Cir. 1980). While Thorne was decided in 1983, it cannot be viewed as having clearly established a privacy right in a person's sexual orientation as of 1997. The Fourth Circuit's decision in Walls addressed the issue squarely in 1990 and reached the opposite conclusion based primarily on Bowers, a Supreme Court precedent decided three years after Thorne. Thus, the law in this area was, at best, unclear.