Kathryn LESOINE,

v.

COUNTY OF LACKAWANNA, PA; Michael Barrasse, Esq., sued in his individual and official capacity as Lackawanna County District Attorney; Eugene M. Talerico, Jr., Esq., sued in his individual capacity as Lackawanna County Assistant District Attorney; Amy Shwed, Esq., sued in her individual capacity as Lackawanna County Assistant District Attorney; John Fox, sued in his individual capacity as detective for the Lackawanna District Attorney's Office; Joseph Jordan, sued in his individual capacity as detective for the Lackawanna District Attorney's Office; James M. Reilly, sued in his individual capacity as detective for the Lackawanna District Attorney's Office John Fox, Appellant.

Kathryn Lesoine,

v.

County of Lackawanna, PA; Michael Barrasse, Esq., sued in his individual and official capacity as Lackawanna County District Attorney; Eugene M. Talerico, Jr., Esq., sued in his individual capacity as Lackawanna County Assistant District Attorney; Amy Shwed, Esq., sued in her individual capacity as Lackawanna County Assistant District Attorney; John Fox, sued in his individual capacity as detective for the Lackawanna District Attorney's Office; Joseph Jordan, sued in his individual capacity as detective for the Lackawanna District Attorney's Office; James M. Reilly,

sued in his individual capacity as detective for the Lackawanna District Attorney's Office Joseph Jordan, Appellant.

Kathryn Lesoine,

v.

County of Lackawanna, PA; Michael Barrasse, Esq., sued in his individual and official capacity as Lackawanna County District Attorney; Eugene M. Talerico, Jr., Esq., sued in his individual capacity as Lackawanna County Assistant District Attorney; Amy Shwed, Esq., sued in her individual capacity as Lackawanna County Assistant District Attorney; John Fox, sued in his individual capacity as detective for the Lackawanna District Attorney's Office; Joseph Jordan, sued in his individual capacity as detective for the Lackawanna District Attorney's Office; James M. Reilly, sued in his individual capacity as detective for the Lackawanna District Attorney's Office James M. Reilly, Appellant.

Nos. 02–1967, 02–1968, 02–1969.

United States Court of Appeals,
Third Circuit.

Argued Oct. 31, 2002.
Decided Aug. 14, 2003.

John P. Moses (Argued), Moses & Gelso, Wilkes–Barre, PA, for Appellants.

Michael D. Collins (Argued), Tannersville, PA, for Appellee.

Before SLOVITER, FUENTES, Circuit Judges, and FULLAM,* District Judge.

## OPINION OF THE COURT

SLOVITER, Circuit Judge.

Plaintiff Kathryn Lesoine filed a civil rights action pursuant to 42 U.S.C. § 1983 against, *inter alia*, the County of Lacka-

---

* Hon. John P. Fullam, Senior Judge, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

wanna[1] and three police detectives, alleging that they violated her constitutional rights when they conducted two searches of her property. The police officers filed a motion for summary judgment based on qualified immunity, which the District Court denied. *Lesoine v. County of Lackawanna*, No. 3:CV–98–764 (M.D.Pa. March 4, 2002) ("Dist.Ct.Op. 2002"). The officers appeal.

## I.

Appellants, James M. Reilly, Joseph Jordan and John Fox, were at all pertinent times police detectives in Lackawanna County, Pennsylvania. Lesoine is a photographer. In July or August of 1995, Lesoine took photographs of her stepdaughter and her stepdaughter's two female friends (ages 15 and 16) standing nude under an outdoor shower at Lesoine's vacation home in Martha's Vineyard. The photographs were taken with the subjects' knowledge but without the knowledge of their parents. In April of 1996, Trish Heil, an amateur photographer, visited Lesoine's home and art studio. During the visit, Lesoine showed Heil much of her work, including the photographs from Martha's Vineyard. Heil recognized the subjects and told their parents about the photographs.

The parents called the District Attorney's Office and requested an investigation. On May 9, 1996, Reilly and Jordan went to the studio and requested that Lesoine give them consent for a warrantless search. Lesoine signed a "Consent to Warrantless Search" form and a friend, who was present, signed as a witness. The detectives then seized a box of photographic prints, including 35 photographs and seven negative sleeves.

After returning to their office, Reilly and Walter Carlson, Chief County Detective, drafted a search warrant for "[p]hotographs, nude and semi-nude photographs of minor children. Business records pertaining to photography business. Computers and computer equipment and records. Telephone logs or records." App. at 874. The warrant alleged that Lesoine violated "18 Pa.C.S.A. § 6312 Sexual Abuse of Children" and "18 Pa.C.S.A. § 6301 Corruption of Minors." App. at 874. Reilly and Carlson submitted the draft warrant to Assistant District Attorney ("ADA") Eugene Talerico for review, and he approved. On May 9, 1996, Reilly and Carlson submitted the search warrant to District Justice Robert Russell who approved and issued the warrant. Reilly, Jordan, and Fox executed the warrant on the same day, May 9, 1996. Numerous photographs were seized and, although the warrant specified photographs of "minor children," the detectives seized studies of nude and semi-nude adults, whom Appellants describe as "youngish-looking adults." Br. of Appellants at 15.

The next day, Reilly, Carlson and Talerico drafted a second, virtually identical search warrant. ADA Amy Shwed reviewed and approved the search warrant prior to its submission to District Justice George E. Clark, Jr. District Justice Clark approved and issued the warrant on May 10, 1996. Reilly, Jordan, Fox and Shwed returned to Lesoine's studio and seized Lesoine's computer, software, disks, and digital audio tapes.

---

1. The District Court granted the County's motion for summary judgment, holding that the County is not liable under a theory of municipal liability because the District Attorney's act of refusing to return Lesoine's photographs was not an official policy, and that Lesoine failed to provide sufficient evidence to support her claim against the County for failure to train or supervise its employees.

Lesoine was not prosecuted in connection with the photographs under either Pennsylvania statute identified in the search warrant or otherwise. She subsequently filed this suit, alleging violations of her First, Fourth, Fifth and Fourteenth Amendment rights, as well as various state claims. The District Court denied the detectives' motion for summary judgment on the basis of qualified immunity. The detectives argue on appeal that: (1) there was probable cause for the issuance of the warrants; (2) no clearly established right was violated; and (3) their actions were objectively reasonable.[2]

## II.

This court has jurisdiction to review a district court order denying qualified immunity at the summary judgment stage under the collateral order doctrine to the extent that the denial turns on questions of law. *Mitchell v. Forsyth,* 472 U.S. 511, 527–28, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985). We exercise plenary review over a district court's denial of a motion for summary judgment on the basis of qualified immunity and consider all facts in the light most favorable to the non-moving party. *Eddy v. Virgin Islands Water & Power Auth.,* 256 F.3d 204, 208 (3d Cir.2001); *Sterling v. Borough of Minersville,* 232 F.3d 190, 192 n. 1 (3d Cir.2000). "This Court has recognized that the question of whether a constitutional right is clearly established and the question of whether the officer acted reasonably are matters of law for the court to decide." *Bartholomew v. Pennsylvania,* 221 F.3d 425, 428 (3d Cir.2000).

To determine whether qualified immunity should be afforded the detectives, we first assess whether Lesoine's allegations are sufficient to establish the violation of a constitutional or statutory right. *Gruenke v. Seip,* 225 F.3d 290, 298 (3d Cir.2000). If such a violation is adequately alleged, we next determine whether the right allegedly violated was clearly established such that a reasonable person would have known about it. *Id.* In making our ultimate determination, we should keep in mind that the availability of qualified immunity for public officials, especially police detectives, "is both necessary and sufficient to preserve [their] ability ... to function effectively." *Marrero v. City of Hialeah,* 625 F.2d 499, 510–11 (5th Cir.1980).

The District Court found that the detectives violated Lesoine's Fourth Amendment rights. In its memorandum and order of May 3, 2000, *Lesoine v. County of Lackawanna,* No. 3:98–CV–0764 (M.D.Pa. May 3, 2000), the District Court held that (1) the search warrants were "unsupported by probable cause" and (2) the warrants "failed to state with reasonable particularity the items to be seized." App. at 258. Subsequently, in its memorandum and order of March 4, 2002, the District Court revisited its analysis and held that it did not need to determine if the warrants were supported by probable cause because the items were not described with reasonable particularity. Dist. Ct. Op. 2002 at 9. "To be constitutionally sound, search warrants must state probable cause and 'particularly describ[e] the place to be searched, and the persons or things to be seized.' " *Bartholomew,* 221 F.3d at 428 (quoting U.S. Const. amend. IV).

■ We conclude the search warrants at issue here were not supported by probable cause. In the supporting affidavit, Reilly justified the need for the warrants based on possible violations of 18 Pa. Cons. Stat. Ann. §§ 6312 and 6301. Section

---

**2.** The District Court granted summary judgment in favor of several other defendants on the basis of qualified immunity. That part of the order is not before us on this appeal.

6312, Sexual Abuse of Children, makes it a crime to "cause[ ] or knowingly permit[ ] a child under the age of 18 years to engage in a prohibited sexual act ... if such person knows, has reason to know or intends that such act may be photographed, videotaped, depicted on computer or filmed." 18 Pa. Cons.Stat. Ann. § 6312(b). The statute also defines a "prohibited sexual act" as, among other things, "lewd exhibition of the genitals or nudity if such nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view such depiction." 18 Pa. Cons. Stat. Ann. § 6312(a).

Section 6301 makes it a crime for an adult to, "by any act corrupt[ ] or tend[ ] to corrupt the morals of any minor." Pa. Cons.Stat. Ann. § 6301(a)(1). The statute covers "a broad range of conduct." *Commonwealth v. Decker*, 698 A.2d 99, 101 (Pa.Super.1997) (quotation omitted). We have even suggested that "it pertains with equal force to conduct such as gambling, underage drinking or drug use ... [and] [i]t is broad enough to include allowing a minor to view an 'R' rated video." *United States v. Galo*, 239 F.3d 572, 582 (3d Cir. 2001). Pennsylvania courts have defined actions that tend to corrupt the morals of minors as those that "would offend the common sense of the community and the sense of decency, propriety and morality which most people entertain." *Commonwealth v. DeWalt*, 752 A.2d 915, 918 (Pa.Super.2000) (quotation omitted).

However, the possession of pictures of nude minors, without more, is protected speech under the First Amendment. *Osborne v. Ohio*, 495 U.S. 103, 112, 110 S.Ct. 1691, 109 L.Ed.2d 98 (1990) (upholding Ohio's anti-child pornography statute be-cause the Ohio Supreme Court had interpreted the law to proscribe not merely nudity, but nudity constituting a lewd exhibition or graphic focus on the genitals); *New York v. Ferber*, 458 U.S. 747, 765 n. 18, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (holding that nudity without more is protected expression). Therefore, Lesoine's mere possession of such pictures does not provide probable cause that she was engaging in illegal conduct under federal or state law. In fact, in a recent decision arising out of the same incident this court concluded as a matter of law that none of the photographs could be held to fall within the federal definition of sexually explicit conduct. *See Doe v. Chamberlin*, 299 F.3d 192, 197 (3d Cir.2002) (affirming the entry of summary judgment in favor of Lesoine and against the parents in a civil suit brought by the parents). After independent review of the photographs, we reach the same conclusion. Yet, Lesoine's possession of the pictures in question was the only articulated source of probable cause for the search warrants at issue.[3]

The affidavits in support of the warrant applications also do not describe how Lesoine allegedly violated the cited statutes; for example, they do not mention how the morals of any minor allegedly were corrupted. Although Pennsylvania law has interpreted § 6301 broadly, *see Galo*, 239 F.3d at 582, the affidavits made no effort to allege conduct violative of the statute. The facts set out in the affidavits of probable cause simply do not provide a sufficient basis upon which a neutral magistrate could assess whether a warrant should be issued.

▆ The Fourth Amendment also requires that a warrant must describe the

---

**3.** Reilly's affidavit also notes that during the consensual search the detectives found photographs of nude children, notwithstanding Lesoine's statement to the brother of one of the girls photographed that she had turned over to him all the pictures she possessed. However, none of the additional pictures seized were alleged to violate §§ 6312 or 6301.

place to be searched and the items to be seized with reasonable particularity. U.S. Const. amend. IV. "The particularity requirement is intended to prevent the police from undertaking a general, exploratory rummaging through a person's belongings." *Bartholomew*, 221 F.3d at 428 (quotation omitted). The warrants at issue in this case authorized the seizure of "[p]hotographs, nude and semi-nude photographs of minor children. Business records pertaining to photography business. Computers and computer equipment and records. Telephone logs or records." App. at 874. Our review of a warrant's particularity is heightened when the materials sought are protected by the First Amendment. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 564, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978) ("Where the materials sought to be seized may be protected by the First Amendment, the requirements of the Fourth Amendment must be applied with 'scrupulous exactitude.'") (citing *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965)). The Supreme Court in *Zurcher* advised that, "[w]here presumptively protected materials are sought to be seized, the warrant requirement should be administered to leave as little as possible to the discretion or whim of the officer in the field." 436 U.S. at 564.

We recognize that it would have been easier to draft a search list if the detectives were searching for physical objects rather than for evidence of a sexual motive for taking the pictures. It was probably difficult to predict what evidence might be present to demonstrate sexual motive. Unlike child pornography, which may be defined with tangible parameters, evidence of sexual stimulation or gratification is more difficult to describe in a warrant.

However, it is apparent that the warrant could have been drafted with greater precision.[4] At a minimum, it is impermissibly overbroad because it requested seizure of lawfully possessed material of no evidentiary value. *See Zurcher*, 436 U.S. at 554 (noting that only fruits, instrumentalities, and evidence of a crime are subject to seizure under the Fourth Amendment). The warrant placed no restrictions on the types of business or computer records that could be seized, regardless of their connection, if any, to a violation of § 6312. As we stated in *Bartholomew*, "[t]he particularity requirement is intended to prevent the police from undertaking a general, exploratory rummaging through a person's belongings." 221 F.3d at 428 (quotation omitted). This requirement was not met by a blanket search and seizure of "business records, pertaining to photography business. Computers and computer equipment and records. Telephone logs or records." App. at 874.

The District Court correctly held that the items to be seized were not described with reasonable particularity, and included material that was not subject to §§ 6301 or 6312 under any reasonable interpretation of those statutes. The warrants violated Lesoine's constitutional rights.

A determination that the detectives' execution of invalid search warrants violated Lesoine's constitutional rights is only the first step in our analysis. The detectives are still entitled to qualified immunity unless the rights violated were clearly estab-

---

4. Lesoine argues that they simply needed to include language from the Pennsylvania statute to limit their search to evidence showing a sexual motivation for the pictures. As the Fourth Circuit explained in *United States v. Dornhofer*, 859 F.2d 1195, 1198 (4th Cir.1988) (quotation omitted), "when a warrant describes the sought for material in the graphic terms of the statute on the sexual exploitation of children, ... [it] is described with all the particularity necessary to satisfy the Fourth Amendment."

lished. For a right to be clearly established, " '[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " *Gruenke*, 225 F.3d at 299 (citing *Anderson v. Creighton*, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)). A public official is entitled to qualified immunity if he/she can demonstrate that he/she "neither knew nor should have known" he/she was violation another's rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818–19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).

■ Lesoine argues that the detectives could not have reasonably believed that their acquisition and execution of the search warrants would not violate her constitutional rights as the warrants were not supported by probable cause and did not meet the constitutional requirement of particularity. In denying qualified immunity to the three detectives, the District Court treated the three of them as a unit. We have reviewed the record, and believe that they may not be similarly situated.

We consider first the position of Detectives Fox and Jordan. Our record review shows that the only actions taken by Fox and Jordan[5] were execution of the warrants. In the context of evidence suppression, the Supreme Court has held that a warrant may be so "facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid." *United States v. Leon*, 468 U.S. 897, 923, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). However, despite the evident deficiencies of the search warrants here, we believe that an officer executing the warrant could have reasonably pre-

sumed he was not violating Lesoine's rights.

First, the contours of Pa. Cons.Stat. Ann. §§ 6312 and 6301 were not well-defined when the warrant was executed. Although the Supreme Court cases are clear that the First Amendment protects some forms of nude photographs, the Court's decisions were not within the context of an application of §§ 6312 or 6301. *See Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) ("the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."). Section 6312 prohibits the possession of otherwise legal photographs of nude children when taken for the purpose of sexual stimulation or gratification. The language in the Pennsylvania statute does not expressly define what qualifies as evidence of sexual stimulation and the case law applying the section is sparse. *See Commonwealth v. Savich*, 716 A.2d 1251, 1257 (Pa.Super.1998) ("proof of purpose of personal sexual gratification may be established by the circumstances surrounding the videotaping" when stranger videotaped minors showering without their knowledge or permission). Therefore, given the uncertain boundaries of §§ 6312 and 6301, a reasonable detective may have believed that he was justified to search for otherwise constitutionally protected items as evidence of a sexual motive.

Second, each warrant was approved by an ADA and signed by a district justice. Although a judge's approval of a warrant does not *per se* shield an officer from liability for the execution of an invalid warrant, *Malley v. Briggs*, 475 U.S. 335, 345–46, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), the Supreme Court "has consistent-

---

5. Jordan participated with Reilly in the consent search but that is not a basis for the claimed constitutional violations.

ly accorded primary evidentiary weight to a magistrate's determination of probable cause." *Id.* at 351. In this case, a different district justice and ADA approved each of the search warrants. Under these circumstances, we must exercise caution in finding that the law at issue was clearly established that the warrants were defective. *See Barts v. Joyner*, 865 F.2d 1187, 1194 (11th Cir.1989) (in the context of a motion to suppress, "when a state court judge upholds the constitutionality of police actions, that alerts us to be particularly careful in concluding that the law was truly clearly established before we permit the officers to be held civilly liable.").

Moreover, it was not unreasonable for Jordan and Fox to rely on the experience and expertise of the ADAs who helped draft and who approved the warrants. *See Bilida v. McCleod*, 211 F.3d 166, 174–75 (1st Cir.2000) ("[p]lausible instructions from a superior or fellow officer support qualified immunity where, viewed objectively in light of the surrounding circumstances, they could lead a reasonable officer to conclude that the necessary legal justification for his actions exists (e.g., a warrant, probable cause, exigent circumstances)"). Jordan and Fox were not involved in drafting the warrants and relied on the local procedures and review by the ADAs. *See Wilson*, 526 U.S. at 617 (where the state of the law is uncertain, it was reasonable for officers to rely on a Department ride-along policy).

Based on the foregoing, we conclude that Jordan and Fox were entitled to qualified immunity.

In contrast, Reilly's connection to the events was much deeper. Fox testified at his deposition: "Well, Detective Reilly. It was his investigation. He was in charge of the search. He initiated the paperwork." App. at 822. Reilly was also the affiant on both the May 9 and May 10 warrants. App. at 874, 885. Based on his intimate involvement in drafting the warrants, Reilly cannot hide behind the approval of the ADAs and district justices. Reilly had the opportunity, in the first instance, to ensure that the warrants met the requirements of the Constitution. There is certainly an issue as to whether an experienced police officer should have known that the warrants failed to describe the items to be searched with the specificity required by the Constitution. We are unwilling, at this juncture of the case, to hold that Reilly is entitled to qualified immunity as a matter of law.

We recognize the awkwardness of requiring the action to proceed against Reilly without the two district attorneys with whom he drafted the search warrants, Talerico and Shwed. But Lesoine chose not to sue them on this basis, and ADA Talerico only remains in the suit "with respect to Count V for unlawfully refusing to return the pictures," as does District Attorney Michael Barrasse. App. at 15. Nonetheless, we hold that the actions against Reilly can proceed. We do not foreclose the District Court from reexamining this issue, even before trial.

For the reasons stated above, the judgment of the District Court is affirmed in part and reversed in part.

FULLAM, Circuit Judge, dissenting in part.

I respectfully dissent, because I believe the decision of the district court should be affirmed in all respects. The district court held, and the majority and I all agree, that the search warrants lacked probable cause, and were facially overbroad. Ms. Lesoine's constitutional rights under the Fourth Amendment were indeed violated, and the legal principles involved were clearly established: Among other things, it

should have been clear to all of the appellants that they could seize only items specified in the warrant, or at least adequately and meaningfully described in the warrant. In my view, no reasonable police officer could possibly carry out seizures of the magnitude involved in this case—virtually all portable assets of an ongoing photography business—in the belief that such seizures were sanctioned by the search warrants in the possession of the officers.

It must be borne in mind that a substantial number of non-obscene photographs were seized before any warrant of any kind was obtained. While the officers initially had Ms. Lesoine's consent to conduct a search, there was no consent to the initial seizure, which, in and of itself, was a violation of the Fourth Amendment. The officers knew, or at least should have known, that neither of the magistrates who issued the two search warrants had been shown any of the photographs which were the ostensible basis for the two subsequent forays and seizures.

The majority suggests that, because to some extent the statutes criminalizing "sexual abuse of children" and "corruption of minors" may depend upon the motive of the actor, the nature of evidence which tends to support a criminal charge under these statutes is correspondingly difficult to define. That may be so, although I suspect that there is less uncertainty than the majority posits. But, in my view, that is entirely beside the point: A warrant which authorizes the seizure of photographs of minors simply cannot be relied upon to justify the wholesale seizure of photographs of adults. Photographs of adults cannot possibly be viewed, in the context of this case, as a basis for the seizure of business records and computers.

In short, regardless of whether the officers are chargeable with knowledge that the search warrants lacked probable cause, they simply cannot, on this record, have reasonably believed that they were authorized to seize materials not covered by the warrant.

Although it is true that Detectives Fox and Jordan were not directly involved in the obtaining of the search warrants and were not in charge of the investigation, and thus may well be less culpable than Detective Reilly, they were in fact involved in the seizures which constituted a violation of Ms. Lesoine's constitutional rights. Whether they may ultimately be held liable in damages to the same extent as Detective Reilly—indeed, whether their employers or superiors may have an obligation, or at least a willingness, to indemnify them against any ultimate verdict—are matters to be addressed in subsequent proceedings, and are not before us on this appeal. Under *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) the district court properly denied qualified immunity to all of the appellants.